F3czramm                        Motion

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    OSCAR RAMIREZ, et al.,

4                    Plaintiffs,

5            v.                            14 CV 4030 (VEC)

6    M L RESTAURANT, CORP., et al.,

7                    Defendants.

8    ------------------------------x

9                                          March 12, 2015
                                           2:30 p.m.
10
     Before:
11
                         HON. VALERIE E. CAPRONI,
12
                                           District Judge
13
                              APPEARANCES
14
     JEANNE E. MIRER
15        Attorney for Plaintiffs

16   ROBERT L. KRASELNIK
          Attorney for Plaintiff Simon Grullon
17
     MARTIN E. RESTITUYO
18   ARGILIO RODRIGUEZ
          Attorneys for Defendants
19

20

21

22

23

24

25

F3czramm                        Motion

1           THE DEPUTY CLERK:  All rise.

2           THE COURT:  Hello.  Please be seated.

3           (Case called)

4           MR. KRASELNIK:  Robert Kraselnik for Simon Grullon,

5    plaintiff.

6           THE COURT:  Mr. Kraselnik.

7           MR. RESTITUYO:  Martin Restituyo for all defendants.

8           THE COURT:  Mr. Restituyo.

9           MR. RODRIGUEZ:  And Argilio Rodriguez for all

10   defendants.

11          THE COURT:  We just got a call from Ms. Mirer telling

12   me that she is running late; she'll be here in a few minutes,

13   so we'll wait.

14          MS. MIRER:  Sorry, your Honor.

15          THE DEPUTY CLERK:  Counsel, note your appearance of

16   record.

17          MS. MIRER:  Jeanne Mirer for plaintiffs Ramirez, et

18   al.

19          THE COURT:  Okay, I think we're now all here.  Please

20   get to court on time.

21          So we have -- I have two motions, the motion to

22   dismiss, partial motion to dismiss made by the defendants.  We

23   have a plaintiff's motion for conditional certification.

24          Here's the order of the day.  We're going to start out

25   and I'm going to give you an opportunity to argue the motion to

F3czramm                          Motion

1   dismiss, then I'm going to discuss -- this is a little bit of a

2   curve ball, I didn't warn you of this -- subject matter

3   jurisdiction for counts 10 through 13, which are your sexual

4   harassment and pregnancy discrimination claims, which are all

5   brought under state law.

6           Then we'll talk about the motion for conditional

7   certification.  Unless somebody says something that is totally

8   not expected, I will then provide you with an oral opinion on

9   the motion to dismiss and the motion for conditional

10   certification.  We will then talk schedule going forward.  So

11   that's the plan for the day.

12           So Mr. Restituyo, I thought I'd start with the motion

13   to dismiss, and it's your motion.  What would you like to tell

14   me?

15           MR. RESTITUYO:  Your Honor, I'm not sure how much more

16   we can -- would you like me to stand, first of all?

17           THE COURT:  I'm not that formal.  Whichever way you're

18   more comfortable and the Court Reporter can hear you.

19           MR. RESTITUYO:  So, your Honor, I'm not sure we can

20   add much more than what we've said in our papers.

21           The only thing that I would point out is that, you

22   know, if we choose to -- so the first thing that we have to

23   consider when reviewing the motions is what the Court can

24   consider when determining a motion to dismiss.

25           Ms. Meyer, in her motion, in her opposition to the

F3czramm                          Motion

 1   motion to dismiss at paragraph nine very adeptly says that a

 2   district court may consider the facts alleged in the complaint,

 3   documents attached to the complaint as exhibits, and documents

 4   incorporated by reference in the complaint.

 5          For the remainder of the motion she goes on to cite a

 6   whole series of documents that do not meet that criteria.  So

 7   she, starting at paragraph 19, she cites the affidavit in

 8   support of motion for class certification of Omar Taveras,

 9   affidavit in support of preliminary injunction for Javier

10   Guerrero, affidavit in support of class certification by Luis

11   Espinol, affidavit in support of class certification by Oscar

12   Ramirez.

13          THE COURT:  Understood.

14          MR. RESTITUYO:  So none of the documents that she

15   cites purport for the to meet even her own, you know, legal

16   analysis.

17          And so first we would argue that they should not be

18   considered when considering whether the plaintiffs actually

19   allege that the non-Liberato defendants are employers.

20          Secondly, your Honor, you know, based on the four

21   corners of the complaint, and even if you go beyond the four

22   corners of the complaint, certainly the plaintiffs have failed

23   to demonstrate, you know, have failed to allege -- make

24   allegations that are plausible on their face that the

25   defendants, that these non-Liberato defendants were employers.

F3czramm                    Motion

1    In fact, there is no allegation sufficient to meet the economic

2    reality test that the Second Circuit abides by.  So there is no

3    indication that any of the employers had the power to hire or

4    fire employees, supervise and control employees work schedules

5    or conditions of employment, determine the rate and method of

6    payment, maintain employee records.

7            To point out, you know, the basic -- the common sense,

8    if you will, standard outlined by Irizarry says the Court must

9    be mindful when considering an individual defendant to

10   ascertain that the individual was engaged in the culpable

11   company's affairs to a degree that is logical to find him

12   liable.  We don't believe that Ms. Mirer has met that burden

13   for any of the non-Liberato defendants and we would urge your

14   Honor to dismiss.

15           THE COURT:  Okay.  Ms. Mirer.

16           MS. MIRER:  Thank you, your Honor.

17           Let me say this.  The complaint that we filed alleged

18   that all of these named defendants were supervisors and/or

19   managers of the plaintiffs.  And --

20           THE COURT:  But it did that in a very conclusory

21   fashion.

22           MS. MIRER:  Well, it said that, but then it laid out

23   all of the particular things that we allege that the supervisor

24   and managers did with respect to the how people were paid, all

25   of the violations of FLSA that we allege.  So we allege these

F3czramm                        Motion

1    managers were part of what we allege to be the violations of

2    FLSA.

3              THE COURT:  But is there any -- maybe I've missed

4    something.  Is there any allegation as to what Mr. Restituyo

5    termed the non-Liberato defendants, that they had the authority

6    to set pay, to determine how much a person was going to be

7    paid.

8              MS. MIRER:  Stated specifically in the complaint, no?

9              THE COURT:  Well, even generally.

10             MS. MIRER:  Well, your Honor, let me try to say that

11   when I looked at all of the cases -- and, obviously, this is a

12   motion to dismiss.  We have to take my allegations to be true.

13   This is not a national corporation.  This is a closely held

14   family corporation in which my clients who are, for the most

15   part, wage -- under paid workers, know who they have to report

16   to, who they have to -- who they talk to about their wages, who

17   they complain to.  This is not something where this is a big

18   secret as to who has what authority.  And, in fact --

19             THE COURT:  No, but if --

20             MS. MIRER:  -- if you look at their answer --

21             THE COURT:  I'm still focused on what allegations do

22   you want to point me to -- let's take a step back.  Simply

23   being a supervisor, do you agree that simply being a supervisor

24   is not sufficient to give rise to FLSA liability?

25             MS. MIRER:  Not necessarily under the definition of

F3czramm                          Motion

1    the statute.

2              THE COURT:  Simply being a supervisor, just you have

3    the title supervisor.  You agree that is not sufficient -- the

4    person doesn't have other authority over the employees, simply

5    being a supervisor is inadequate.

6              MS. MIRER:  What I'm saying is that for purposes of a

7    FLSA case, the question is whether or not the individual's

8    involvement allows them to have employer status.  And --

9              THE COURT:  Correct.

10             MS. MIRER:  -- as defined by the statute, which is

11   extremely broad and has remedial purposes, and is supposed to

12   be -- the purpose was to be able to bring as many people in who

13   have some type of say in the running of the business, so that

14   there could be some pressure on the company to comply with the

15   law.  That's one of the -- that's one of the hallmarks of why

16   there is an expansive definition.

17             What we're saying, your Honor, is that if you look at

18   what has been pled in this case, and not necessarily in the

19   pleadings, but in other things that have been brought before

20   your Honor with respect to specific people, it's very clear who

21   my plaintiffs went to to talk about their pay, to talk about

22   their what kind of hours they had, what their schedule was,

23   when they were supposed to show up at work, what station they

24   were supposed to be at, things --

25             THE COURT:  I don't think there's anything that gets

F3czramm                        Motion

1    that specific.

2           But why should I consider the information in R

3    affidavits when you did not incorporate it into the complaint,

4    into the third amended complaint?

5           MS. MIRER:  Well, let me suggest, your Honor, the

6    third -- most of the cases post Iqbal, and except for some more

7    recent ones, most of the cases post Iqbal have had to do with

8    has the plaintiff stated enough specificity to show that they

9    are entitled to some relief under the statute.  The question

10   with respect to defendants has usually arisen in the case of

11   situations where it's really unclear who the defendants are,

12   and who has managerial control.  In the --

13          THE COURT:  But that has to be in the complaint.

14          MS. MIRER:  Your Honor, each time we amended the

15   complaint, we amended the complaint to allege that most, mostly

16   more claims with respect to each of the plaintiffs.

17          All of the cases cited by defendants have said if

18   there is not enough pleading, then it's dismissed, dismissed

19   without prejudice and --

20          THE COURT:  As to each -- no.  Wait a minute.  My

21   rules are very clear that you can't amend -- you can't file a

22   complaint, get a motion to dismiss, not respond -- respond to

23   the motion to dismiss rather than amending.  You were on notice

24   that this was the objection of the defendants and you did not

25   amend the complaint --

F3czramm                        Motion

1              MS. MIRER:  Actually --

2              THE COURT:  -- to fix it.

3              MS. MIRER:  Actually in their opening brief they did

4      not raise any of the cases that they raised in their reply

5      brief.

6              THE COURT:  But you raised the issue that you are

7      not -- that you do not make adequate allegations against the

8      individual defendants.

9              MS. MIRER:  Not exactly in their opening brief, your

10     Honor.  That was more in the reply brief.

11             But having said that --

12             THE COURT:  Are there facts that you have that do not

13     appear in the affidavit, so if I look at the universe, the

14     affidavits that you submitted in support of the preliminary

15     injunction the affidavits that you submitted in support of the

16     collective certification and the complaint --

17             MS. MIRER:  Yes.

18             THE COURT:  Do I have the universe of facts?

19             MS. MIRER:  No, we have actually some more facts that

20     came to our attention yesterday.

21             THE COURT:  Well, you know, this -- okay.

22             MS. MIRER:  Can I explain what they are?

23             THE COURT:  No.  They're not in the complaint.

24             MS. MIRER:  Well, I have a supplemental affirmation

25     that I prepared to submit to the Court, which shows

F3czramm                         Motion

conclusively with respect to Fernando Liberato who is also

Raphael and Lucila Gomez that they specifically are discussing

why it is that, or how it is that the defendants require the

plaintiffs to sign false records.  And this came to our

attention in an audio that was made with respect to a

conversation that Ms. Crecencio, Andres Crecencio had with

Lucila Gomez and Fernando Liberato.

            THE COURT:  When?

            MS. MIRER:  When was the discussion?  The discussion

was about a year ago.  I didn't find out about it until last

night.  But she makes reference to similar things in her

affidavit.  But this is now absolute proof that in fact the

audio shows that in fact this has occurred.

            THE COURT:  That what has occurred?

            MS. MIRER:  That Miss Crecencio, Andres Crecencio,

Maggie Andres Crecencio --

            THE COURT:  A plaintiff.

            MS. MIRER:  A plaintiff, raised with both Lucila

Gomez, her supervisor, and Fernando Liberato, also a manager,

why it was that she was required to sign for a $150 in tips

when she did not get $150 in tips.  And they are on tape

saying, this is a way we do it, in essence.  We have -- I mean

I have the actual transcript and the tape -- this is, this is

what's required, and besides if you make more than $150 in

tips, we don't take it away from you, and besides, we don't

F3czramm                    Motion

1   charge you for lunch.  And she said, but I don't get lunch, I

2   get ten minutes to stop working to eat, and I'm --

3           THE COURT:  But that still doesn't show that they set

4   the policies.

5           MS. MIRER:  Well, you don't have to show that they set

6   the policy.

7           THE COURT:  They have --

8           MS. MIRER:  For the Carter factors, you don't have to

9   show they set it.  They were certainly aware, they were

10  implementing, they were discussing the rationale for it.

11          THE COURT:  Implementing it is different from knowing

12  the rationale.  You haven't alleged any of that.

13          MS. MIRER:  Well, I'm saying this is what they say

14  what the rationale is.

15          THE COURT:  Okay.

16          MS. MIRER:  They say the rationale is, we don't take

17  your tips if it's over 150, which they're actually not entitled

18  to do anyway.

19          THE COURT:  Okay, stay focused.  The focus is on the

20  allegations in the complaint against the non-Liberato

21  defendants.  That's the focus.

22          If there is anything more that you want to tell me

23  about why I should consider materials that are not in the

24  complaint and not in the existing many affidavits that have

25  submitted, I'm here to hear that.

F3czramm                       Motion

1        MS. MIRER:  Well, in terms of this other information

2   that I found that I got yesterday as well.

3        THE COURT:  And why should I consider that when your

4   client, who is the plaintiff, has had this information for a

5   year you say?

6        MS. MIRER:  No, no.  I'm talk -- your Honor, I don't

7   speak Spanish.  I work with people who speak Spanish.  The

8   lawyer, when the -- there's sometimes a gap between what the

9   clients know, maybe need and what I actually need, and it's

10  lost in translation.  It's not something that I am, you know,

11  willing -- I'm saying that it's?

12       THE COURT:  But, Ms. Mirer --

13       MS. MIRER:  Let me --

14       THE COURT:  No, wait.  The limit is, this complaint

15  was first filed in early 2014.

16       MS. MIRER:  No.  In June.

17       THE COURT:  The original complaint?

18       MS. MIRER:  Yes.

19       THE COURT:  June.

20       MS. MIRER:  June 5th.

21       THE COURT:  Mid 2014.  So that's nine months ago.

22       MS. MIRER:  Yes.

23       THE COURT:  Kind of time it takes to have a baby.

24  There comes a point where the complaint has to stop.  You've

25  amended it twice.  This is the third, three times, third

1    amended complaint.  The defendants are entitled to know what

2    they're defending against.  It can't be a moving party where

3    every time Ms. Mirer gets something translated she wants to

4    change the complaint.  That's not fair to the defendants.

5    That's not how litigation works.

6              MS. MIRER:  Your Honor, with respect to the

7    plaintiffs' claims, as I find out claims I have an obligation

8    to bring them to the attention of the Court and the other and

9    the defendant which I did.  And if you look at all of my

10   amendments, they are all with respect to the plaintiffs'

11   claims.  And what --

12             THE COURT:  But it's the plaintiffs' claims against

13   the defendants.

14             MS. MIRER:  Except it's -- I'm sorry.

15             THE COURT:  What we're talking about is what you have

16   alleged about particular defendants.

17             MS. MIRER:  Right.

18             THE COURT:  That's the issue.

19             MS. MIRER:  It's disingenuous for the defendants in

20   this closely held corporation to say they don't know that

21   Victor Liberato is a supervisor, controls the hours over at

22   Burnside.  And, in fact, we have --

23             THE COURT:  But you're the plaintiff.

24             MS. MIRER:  I am.  I understand that.  But let me be

25   clear.  There is plenty of case law that says we can make

1    claims on information and belief if the information is almost

2    exclusively in the control of the defendant -- which it is in

3    this case.  They know -- they're not -- obviously they believe

4    Mr. Antonio Liberato has done -- has the power to hire and

5    fire, set schedules, do all that.  They're not seeking to

6    eliminate him.

7          But the cases call for allowing defendants who have

8    delegated authority to do these things.  And these people have

9    that delegated authority.  It's a broad remedial statute.  To

10   allow as many defendants who potentially are complicit in the

11   acts -- you know, if Victor Liberato says or Fernando Liberato

12   says we make you sign false records because that's the way we

13   do it, that's not somebody who is completely in the dark about

14   what the policy is.

15          THE COURT:  But I don't know that being in the no or

16   in the dark is the issue.  That's not the --

17          MS. MIRER:  The issue is whether or not there is a

18   plausible claim that these people fit the definition of

19   defendant, and if in fact.

20          THE COURT:  Of the employer.

21          MS. MIRER:  Of an employer to be a defendant.  And

22   what we're saying is that even under Iqbal, to allege it, it

23   has to be considered true.  It's not -- there's allegations

24   with respect to each of the things that we allege that the

25   supervisors did.

F3czramm                        Motion

1           I think it would be reversible error if the Court were

2    to dismiss without -- with prejudice, in light of the fact that

3    we have submitted to the Court information which has been

4    showing more specifics as to what each of the defendant's role

5    was that were able to find out more through the conditional

6    certification affidavits and who they went to.  These are

7    the -- frankly, your Honor, this complaint that I filed in this

8    case is almost identical to ones that I filed for many years,

9    which have never had a problem.  So, obviously, it did not

10   occur to me with respect to this defendant, which where we're

11   talking about maybe six or seven people who are basically

12   running this restaurant, that they would think that these

13   people didn't have enough delegated authority to do the kinds

14   of things that they do to make them employers under the Act, to

15   fit within the definition, and that they can't think it's

16   plausible, that this is alleged, to me doesn't make any sense.

17   Under Iqbal, all you have to do is allege enough facts to make

18   it plausible that these folks are, at the pleading stage are

19   employers, are within the definition of employer.

20           THE COURT:  But you have to allege facts.

21           MS. MIRER:  Well, your Honor --

22           THE COURT:  You can't allege conclusions.

23           MS. MIRER:  I believe it would be reversible error if

24   this Court would not allow us to amend the complaint to allege

25   the things that we now have more information about and to --

F3czramm                        Motion

```
 1              THE COURT:  To make the record just to be clear you
 2      had the information.  You've acknowledged that you had the
 3      information.
 4              MS. MIRER:  We, we have --
 5              THE COURT:  It's information that your client knew.
 6              MS. MIRER:  We acknowledge that, for purposes of the
 7      complaint, we alleged facts that showed these people who we
 8      have named to be supervisors, managers, and we believe within
 9      the definition of employer for purposes of FLSA.
10              THE COURT:  And as I understand it your supplemental
11      affidavit that you want to -- that you haven't filed, which you
12      want to hand up during the course of oral argument, relates to
13      Victor Liberato and who else?
14              MS. MIRER:  Fernando Liberato.
15              THE COURT:  Victor Liberato and Fernando.
16              MS. MIRER:  And Lucila Gomez.
17              MR. RESTITUYO:  Your Honor, for the record there is no
18      Fernando Liberato.
19              MS. MIRER:  It's Raphael Liberato.  He's known as Fay,
20      I'm sorry.  But that's how our people know him as Fay Fernando,
21      that's what they call him.
22              THE COURT:  So he's.
23              MS. MIRER:  He's Raphael Liberato.  That's his actual
24      name.
25              THE COURT:  In the complaint he's identified as
```

F3czramm                    Motion

1  Fernando Liberato, right?

2          MS. MIRER:  Right.  But in their answer to the

3  complaint they identify him as Raphael, which we've accepted.

4          THE COURT:  Okay.

5          MS. MIRER:  Obviously.

6          THE COURT:  Okay.  But you don't have any additional

7  facts relative to any of the other various people that you've

8  alleged as defendants.

9          MS. MIRER:  Well, with respect to the ones that we've

10  alleged in our response, we certainly say that Nelson Gomez has

11  been -- was identified as somebody who fired --

12          THE COURT:  I'm asking you do you have any additional

13  information.  I've read everything you've given me.

14          MS. MIRER:  Okay.

15          THE COURT:  I know everything that you've alleged

16  about each of these people.  The facts that you've alleged.

17          MS. MIRER:  Uh-huh.

18          THE COURT:  Is there anything further?

19          MS. MIRER:  With respect to the facts, no.

20          THE COURT:  Okay.

21          MS. MIRER:  But the only thing I did want to say is

22  that I do have with respect to Victor I did mention that, you

23  have that.

24          THE COURT:  As I understand it, it's with respect to

25  Victor, Fernando also known as Raphael, and Lucy Gomez.

F3czramm                        Motion

1          MS. MIRER:  Correct.

2          THE COURT:  Does your supplemental affidavit touch on

3   each on specific statements that each person made?

4          MS. MIRER:  Yes.

5          THE COURT:  Okay.  All right.  Have you shared it with

6   Mr. Restituyo?

7          MS. MIRER:  I'm about to.

8          THE COURT:  Okay.  So this is not a good way of

9   practicing law.  Again --

10          MS. MIRER:  Your Honor --

11          THE COURT:  This is -- I haven't seen it.  This has

12   been scheduled, this oral argument was scheduled now for two

13   weeks, and you haven't given it to me and you haven't given it

14   to your opponent, which means none of us are prepared to deal

15   with it.

16          MS. MIRER:  We have --

17          THE COURT:  You're the one who wants this case to go,

18   and yet at each step you slow me down by not providing

19   information in a timely way.

20          MS. MIRER:  Your Honor, as I said, we got this

21   information yesterday, and I apologize to the Court and

22   apologize to my opponents.  But we were, unfortunately at

23   midnight last night, we were trying to figure out how to get

24   something translated, because that was the problem.  And I wish

25   it was otherwise.  And it's not like we haven't been working

F3czramm                    Motion

1  extremely hard on this case and doing many many things with

2  respect to this litigation.

3       THE COURT:  Okay Mr. Restituyo, anything that you like

4  to say?

5       MS. MIRER:  May I approach with the --

6       THE COURT:  Yes.

7       MR. RESTITUYO:  Your Honor, it's very difficult to

8  deal this way.  But first I will note that this affidavit, even

9  under Ms. Mirer's reading of the law would be inadmissible to,

10  under consideration for a motion to dismiss.  Even under her

11  own argument in her own opposition to the motion to dismiss,

12  this affidavit would be inadmissible.

13       THE COURT:  I assume that what she would intend is to

14  say that she should be given leave to amend the complaint yet

15  again, based on this evidence and, therefore, be able to state

16  a claim against Victor and Raphael Liberato and Lucy Gomez.  Is

17  that --

18       MS. MIRER:  And Nelson, which we have --

19       THE COURT:  Who is Nelson?

20       MS. MIRER:  Nelson Gomez is the one that fired

21  Mr. Ramirez.

22       THE COURT:  I just asked you if there was anything in

23  that other than against these three people and you said no.

24       MS. MIRER:  No.  I started raising the facts that

25  there had been the testimony and the affidavit from Oscar

F3czramm                    Motion

1    Ramirez that he had been fired by Nelson Gomez, and so --

2            THE COURT:  That's a different affidavit.  Isn't that

3    already in the record?

4            MS. MIRER:  That's already in the record, right.

5            THE COURT:  Okay.  So the question is whether this

6    additional evidence provides additional facts.

7            I assume, to answer to Mr. Restituyo's point, that the

8    argument would be you should be given leave to amend the

9    complaint again because of this newly discovered evidence

10   regarding Victor and Raphael Liberato and Lucy Gomez.

11           Anything about Oscar and Nelson Gomez is not newly

12   discovered.  You already had that.  You've submitted it in a

13   prior affidavit.

14           MS. MIRER:  And in our response to the motion to

15   dismiss.

16           THE COURT:  But it's not in the complaint.

17           MS. MIRER:  It's not specifically in the complaint,

18   no.

19           THE COURT:  Okay.

20           MR. RESTITUYO:  One --

21           MS. MIRER:  Except for the fact that it does state

22   with respect to Oscar's claims that he was fired by Nelson

23   Gomez.  It does state in the complaint that he was fired by

24   Nelson Gomez.

25           THE COURT:  What paragraph is that?

F3czramm                    Motion

1          MS. MIRER:  That would be in the section related to

2     Mr --

3          THE COURT:  Give me a particular paragraph.

4          MS. MIRER:  I have to pull out the third amended

5     complaint, your Honor.

6          THE COURT:  I think the paragraph you're talking about

7     is paragraph 40?

8          MS. MIRER:  Yes.

9          THE COURT:  Which reads, "On or about December 15th

10    2013, Ramirez was fired shortly after he raised concerns on

11    behalf of himself and his co-workers about the legality of

12    their low wages with his manager, Nelson Gomez."

13          That does not allege that Nelson Gomez fired him.  You

14    allege a chronology, not cause.  I mean, I can infer cause, but

15    I can't infer that Mr. Gomez fired him.  There is no allegation

16    in there that he fired him.  If Nelson Gomez was the one who

17    said to Oscar Ramirez you're fired --

18          MS. MIRER:  That's what he did, your Honor.

19          THE COURT:  But that's not in the complaint.

20          MR. RESTITUYO:  Your Honor, that --

21          THE COURT:  It's not even close to in the complaint.

22          MR. RESTITUYO:  I don't know how much more I should

23    say.  But it also misstates the record because there is an

24    affidavit where -- that Ms. Mirer submitted for her clients,

25    wherein Mr. Ramirez states that a co-worker gave him an

F3czramm                    Motion

 1   envelope and said that they would get -- that he would get a

 2   call back, and so he never got a call back.

 3              So for her to now misstate the report to say that,

 4   that Nelson Gomez fired Oscar Ramirez is

 5              THE COURT:  Inconsistent with the affidavit.

 6              MR. RESTITUYO:  Yes.

 7              THE COURT:  The other affidavit.

 8              Okay, anything further, Ms. Mirer, relative to the

 9   motion to dismiss?

10              MS. MIRER:  Only that I think it would be -- it's

11   disingenuous of the defendant to argue that they have -- that

12   none of these other defendants have any role in the management

13   or control over these plaintiffs, given that --

14              THE COURT:  Okay.  But that's not the way it works.  I

15   mean, they don't have to do anything on a motion to dismiss.

16   It's the plaintiff's obligation to allege sufficient facts so

17   that the Court, when the complaint is tested, can say there's

18   sufficient facts alleged to make -- to state a claim against

19   who, even under your scenario, are lower level employees of the

20   establishment.

21              MS. MIRER:  Typically, typically, your Honor, the

22   cases that address, have addressed this have been on summary

23   judgment after there's been discovery.

24              THE COURT:  But they're not all --

25              MS. MIRER:  No, I understand.

F3czramm                          Motion

1          THE COURT:  The rules on the complaint are the rules

2    on the complaint, whether it's an FLSA case or an antitrust

3    case, you still have to state a claim.  You have to state a

4    claim against each defendant.

5          MS. MIRER:  Your Honor, I perfectly understand.

6          THE COURT:  Okay.

7          MS. MIRER:  I'm just saying that with respect to the

8    remedial nature of the statute, the broad definition of who is

9    an employer that, as has been interpreted by the courts, and

10   giving my complaint the reasonable, all favorable reasonable

11   inferences and other things that this Court knows could be in

12   the record that would support the claims that these individuals

13   had control over the day-to-day operation of the restaurant and

14   these plaintiffs, that this Court should not grant a motion to

15   dismiss.  To the extent that there is questions of fact, they

16   should be raised later on summary judgment.

17         THE COURT:  Okay.  That's just not the law, but --

18         MS. MIRER:  Well --

19         THE COURT:  Okay.

20         MS. MIRER:  Or I should be allowed to amend to add --

21         THE COURT:  How many times are you going to be allowed

22   to amend?  They're entitled to know what they're defending

23   against.  This is now -- we're nine months into the case.  So I

24   can tell you that I'm not giving you leave to amend.

25         MS. MIRER:  Well, as I said, I believe that's

F3czramm                    Motion

1    reversible error.

2            THE COURT:  I'll take my chances with the people

3    upstairs.

4            MS. MIRER:  Thank you.

5            THE COURT:  Anything further, Mr. Restituyo, on this

6    issue?

7            MR. RESTITUYO:  No.

8            Just for the record, your Honor, let it be clear that

9    there are 14 plaintiffs, that by the time the third amended

10   complaint was filed had ten months, at least ten months.  And

11   Mr. Ramirez's affidavit seems to suggest that they were

12   planning this even before he was terminated in December.  So

13   it's fair to say they've had well over a year to get their

14   pleadings right.  And now we're in, you know, April or March of

15   2015 when this thing began in December of 2013, presumably, and

16   we believe that the defendants would be significantly

17   prejudiced by giving plaintiffs yet another opportunity to

18   amend the complaint.

19           THE COURT:  Okay.  Well, my view is that my individual

20   rules are very clear on this issue, that I'm not in the

21   business of rendering, essentially, sort of serial tutorials in

22   terms of how to draft a complaint.  That's just not the deal.

23   You had an opportunity, you didn't take it so we are where we

24   are at this point.

25           Let me turn -- I don't think there is anything more to

F3czramm                    Motion

 1    say on motion to dismiss.  I'm not seeing anything from either

 2    one of you.

 3          Ms. Mirer, so I think when last I saw you I suggested

 4    that we would -- that I wanted you to think about, and I was

 5    thinking about the notion of severing the sexual

 6    harassment/pregnancy discrimination, those counts from

 7    everything else because they really are different, and that

 8    then caused me to actually pay sharp attention to those counts.

 9    First off, do you have a view on whether, assuming the case all

10    stays together, those counts should or should not be severed

11    for discovery in the trial?

12          MS. MIRER:  Certainly for trial they could be severed,

13    but not necessarily for discovery.

14          THE COURT:  Okay.  So when I looked more carefully at

15    those claims, I noted that they are all brought under state

16    law.

17          MS. MIRER:  Correct.

18          THE COURT:  So my question is, regardless of whether

19    they're severed, why do I have subject matter jurisdiction over

20    those claims?

21          MS. MIRER:  Just under supplemental jurisdiction, your

22    Honor, given the fact that in order to file those cases in

23    federal court there would have had to been an EEOC finding and

24    EEOC filing and a --

25          THE COURT:  Right to --

F3czramm                          Motion

1          MS. MIRER:  Right to sue letter.  And given the timing

2     of them, they were -- and our need to file all claims that we

3     knew about together, we filed them in this complaint asserting

4     supplemental jurisdiction.

5          THE COURT:  Okay.  So in order for there to be

6     supplemental jurisdiction, let's all go back to civil procedure

7     right and Gibbs.  The claims all have to arise out of a common

8     nucleus of operative facts.  That's the test.

9          So tell me why those claims, which strike me for the

10    very reason that I think you agreed they could be severed for

11    trial and the reason it seemed to me they should be severed for

12    trial, is that they really arise out of a whole different set

13    of facts.  They arise out of those women's relationship to the

14    alleged harassers.  And as to the pregnant employee, it's a

15    one-off issue of whether she was discharged because she was

16    pregnant.  But none of that really I mean, persuaded me that

17    all of that has anything to do with whether Liberato restaurant

18    pays overtime, minimum wage in spite of hours, which is the

19    core operative facts that will be being tried in the FLSA case.

20         MS. MIRER:  And some retaliation claims.

21         THE COURT:  And retaliation claims related to minimum

22    wage, overtime and spread of hours.

23         MS. MIRER:  Your Honor, the way we have looked at it

24    is that there is a relationship between the vulnerability that

25    these workers have with respect to their pay, and also with

F3czramm                        Motion

1    respect to how they're treated on the job; and that the sexual

2    harassment is part and parcel of the way in which these workers

3    are treated on the job, in conjunction with being vulnerable

4    employees who are making less than minimum wage.  That's how I

5    thought of it together, your Honor; that it was -- that these

6    are -- the same people are involved, that they feel that they

7    have to put up with this in order to maintain their jobs.

8            THE COURT:  But even the courts that take a very broad

9    view of supplemental jurisdiction do not view all claims that

10   arise out of one employment relationship to be all within

11   supplemental jurisdiction, because they don't all link back to

12   the -- I mean the fact -- accepting the plaintiffs' view of the

13   facts, assume that they are exploited workers.  The evidence

14   that's going to be used to prove that is, you know, schedules,

15   cash disbursements, whatever records they have, or the

16   employees' statements about how long they worked and how much

17   they got paid.

18           The fact that they feel exploited, the fact that they

19   don't think they can complain is neither here nor there to the

20   FLSA case.  It may be a byproduct of the fact -- I mean the

21   truth is these things, as you know better than anybody, it's

22   all very much mooshed together.  The reason that they,

23   undocumented workers are exploited is because they're

24   undocumented workers.  And the reason that they can be

25   exploited is because they're undocumented workers.  And the

F3czramm                    Motion

1    reason that they're willing to work, notwithstanding the fact

2    they're not being paid minimum wage is because they're

3    undocumented workers.  And it's a vicious circle that you're

4    doing your part to un-circle.  But none of that, that kind of

5    the feeling of helplessness, the feeling of I'm being

6    exploited, I'm being treated badly is not integral to your

7    case.  In fact, none of that will even be admissible.  What

8    will be admissible is how long did they work, how much did they

9    get paid.

10            MS. MIRER:  Having said that, all this means, though,

11   is that if the Court's saying that there's no overlap in facts,

12   that's one thing.  But the fact is that some of the same people

13   are involved in --

14            THE COURT:  But that's not enough alone, the fact that

15   common witnesses.

16            MS. MIRER:  And it arises out of their work on the

17   job.

18            THE COURT:  And that's not enough because you can have

19   lots of different claims that arise out of employment on the

20   job.

21            MS. MIRER:  The other issue is having to start all

22   over in another court and the judicial economy of not being

23   able to --

24            THE COURT:  But if I don't have jurisdiction, there is

25   nothing I can do about that.

1          MS. MIRER:  Well, your Honor, if you don't feel you

2     have jurisdiction, that's one thing.  I obviously believe that

3     it fit within the supplemental jurisdiction when I pled it.

4     I'm not trying to, you know, say that all of these things are

5     so interrelated that in terms of how they're paid doesn't

6     contribute to the fact that they were sexually harassed.  I

7     mean, I think the Court just eloquently connected the issues

8     the way we would, but you're saying that they're not relevant,

9     and that's --

10          THE COURT:  I'm saying that's a psychological

11    connection that is not a common nucleus of operative facts as

12    that term is used by the Supreme Court in Gibbs.  I mean, the

13    evidence would not -- aside from the fact that there's overlap

14    of witnesses, which is clearly not enough, the evidence that

15    proves sexual harassment neither proves -- neither increases

16    nor decreases the evidence on the FLSA case.  There's

17    absolutely no overlap of evidence between those claims and the

18    FLSA claim.

19          Look, because I sort of popped this on you, I'm

20    prepared to give you time to brief it if you want, okay.

21          MS. MIRER:  Uh-huh.

22          THE COURT:  Before we get there, Mr. Restituyo, do you

23    want to be heard on this?

24          MR. RESTITUYO:  No, your Honor.  I see it like the

25    Court sees it.  Basically, I don't see the common nucleus of

F3czramm                    Motion

```
 1    facts.  At best, they make individual allegations, one employee

 2    against one person, et cetera.  And so especially when you're

 3    talking in the class context, which is what Ms. Mirer is

 4    seeking, class certification to include these one off

 5    individual allegations by one afflicted person allegedly

 6    against one particular alleged to be supervisor, I don't think

 7    it fits within the --

 8            THE COURT:  I mean, you understand if I dismiss, it

 9    will be a dismissal without prejudice, and if she wants she can

10    walk over to Bronx Supreme and bring the same claim there.

11            MR. RESTITUYO:  We understand, your Honor.

12            THE COURT:  Okay.

13            MS. MIRER:  And it would be against individual

14    defendants that they're now seeking to dismiss in this case.

15            THE COURT:  So be it.  I'll come back to you, I

16    promise.

17            MR. RESTITUYO:  No, no.

18            THE COURT:  Ms. Mirer, do I correctly understand that

19    the reason that these claims were not brought under Title VII

20    is because they cannot be, the employees did not complain to

21    EEO?

22            MS. MIRER:  They have not filed EEOC charges.

23            THE COURT:  They're out of time now, right, on sexual

24    harassment?  That was a long time ago.

25            MS. MIRER:  Yeah.  I mean, they're not out of time on
```

F3czramm                         Motion

```
 1   the state claims.

 2            THE COURT:  No, no.

 3            MS. MIRER:  Right.

 4            THE COURT:  In terms of the federal, the question is

 5   whether --

 6            MS. MIRER:  It would be beyond 300 days, yes, your

 7   Honor.

 8            THE COURT:  Okay, I'm sorry, Mr. Restituyo, I've cut

 9   you off.

10            MR. RESTITUYO:  No, your Honor.  I'm good.

11            THE COURT:  Okay.  All right.  Anything -- I will give

12   you an opportunity to brief this.  We'll set -- I'm going to

13   set schedules at the end.

14            MS. MIRER:  Okay.

15            THE COURT:  Okay.  Okay, now let's move to the motion

16   for conditional certification.

17            Ms. Mirer, this is your motion.

18            MS. MIRER:  Your Honor, we believe that with respect

19   to conditional certification, it's really a preliminary

20   determination as to which potential plaintiffs may be, in fact,

21   similarly situated to others, and it's a fairly low bar with

22   respect to how that similarly situated nature is met, and I

23   believe with our affidavits, with our pleadings we have met all

24   of those issues.  I think the, really, the only issues may be

25   on issues of notice.  I don't think the cases that were cited
```

1    by defendant really undercut the motion and the claims that we

2    made in the motion.

3             THE COURT:  Let me ask you to focus on what is the

4    evidence that the workers at the two restaurants are under

5    similar -- that there is, despite the fact that they seem to be

6    actually owned by separate corporate entities, whatever the

7    entity is that owns them, that it's really one set of policies

8    and procedures and --

9             MS. MIRER:  The affidavits that we've submitted -- we

10   have six affidavits from Burnside and the rest are from 183rd,

11   they're -- of our 14 plaintiffs, almost half are from Burnside

12   and they allege a common policy as well.

13            THE COURT:  But as between Burnside and --

14            MS. MIRER:  And 183rd.

15            THE COURT:  183rd Street.

16            MS. MIRER:  Yeah.

17            THE COURT:  Okay.  And what about the difference -- I

18   didn't make a chart in terms of the job classification.  It

19   looked like you had some people that started out as some

20   combination of counter people and wait staff.

21            MS. MIRER:  And kitchen staff.

22            THE COURT:  And kitchen.  Do you have any like

23   delivery men?

24            MS. MIRER:  Mr. Grullon is delivery.

25            THE COURT:  Is a deliverer man, okay.  And dish

F3czramm                        Motion

1   washers?

2           MS. MIRER:  Oscar Ramirez was a dishwasher.

3           THE COURT:  Cooks?

4           MS. MIRER:  Javier is a cook.

5           THE COURT:  Okay.  And they're all subject to the

6   same --

7           MS. MIRER:  Yes.

8           THE COURT:  -- policies.

9           MS. MIRER:  Yes.

10          THE COURT:  Okay.  Are there any employees at the

11  restaurant that are not subject to that same wage policies?  Is

12  this a restaurant that you allege is doing one thing for

13  workers who are documented and a different thing for workers

14  who are undocumented?

15          MS. MIRER:  No.

16          THE COURT:  Okay.  So it's just across the board

17  they're not paying minimum wage and overtime according to the

18  plaintiffs.

19          MS. MIRER:  According to the plaintiffs, correct.

20          THE COURT:  Okay.  One of the issues, before we get

21  sort of -- I'll get to you on substance -- is the notice period

22  which you're seeking I think is 90 days?

23          MS. MIRER:  Well, initially when we filed this back in

24  September it was 120 days, but I mean obviously the quicker we

25  can get the notice out and back, the better.  It's just enough

1    time to for people to get it and make a reasoned decision.

2          THE COURT:  Right.  What is the shortest period that

3    you think you can live with?

4          MS. MIRER:  Probably 60 days at the most.

5          THE COURT:  How about something shorter than that?

6    That's two full months from the time --

7          MS. MIRER:  I mean, it would have to be 45 from the

8    date of the notices, probably the shortest that --

9          THE COURT:  You don't think, given the amount of

10   controversy associated with this restaurant, that 30 days would

11   be sufficient?

12         MS. MIRER:  It would seem to me that the defendant

13   would want to extinguish all possible claims and want there to

14   be.

15         THE COURT:  I'll get to him.  I'm asking what you can

16   live with.

17         MS. MIRER:  Your Honor, given the passage of time, I'm

18   willing to live with anything as long as it gets out quickly

19   and we can, you know, get it back quickly and we can agree on

20   the notice.

21         THE COURT:  Okay.  One of the things that you have

22   proposed in your notice is that the notice -- that the date

23   should be the date of the original filing of the complaint

24   which was June, whatever, minus three years.  What is the basis

25   for that versus clocking backwards three years from the date of

F3czramm                    Motion

1    the notice?

2              MS. MIRER:  I'm trying to think.  I think it was --

3    this was based on a notice that I did in another case which was

4    based on the date of the filing.  So I'd have to double check

5    as to why -- it was based on a notice of that went out in

6    another case that was approved that was based on the date of

7    the filing.  I mean, obviously, the statute is still running as

8    to the people who are not opted in yet, so --

9              THE COURT:  Right.

10             MS. MIRER:  -- I'd have to double check in terms of

11   whether the date of the notice or the date of the filing.

12             THE COURT:  Okay.  So for right now I just see no

13   basis for equitable tolling from June to now.

14             One of the things that you've asked for in your

15   request is that you want from the defendants the workers'

16   Social Security numbers and telephone numbers.  Why?

17             MS. MIRER:  I don't need it.

18             THE COURT:  You do not need it.  Okay, good.

19             And what is your authority for ordering that the

20   defendant post a notice in his restaurant?

21             MS. MIRER:  Other than the fact that it's been done in

22   other cases of mine where there was some question as to whether

23   people were able to get regular mail or read and write Spanish

24   or --

25             THE COURT:  Or do what?

1           MS. MIRER:  Get regular mail or lot of --

2           THE COURT:  Or?

3           MS. MIRER:  In terms of -- making sure that it's --

4           THE COURT:  I'm trying to -- I didn't understand.  You

5    said in terms of whether people can get regular mail or

6    something.

7           MS. MIRER:  Whether -- we need to know whether it

8    would be in Spanish for people to be able to understand it.

9           THE COURT:  I presume that you're going to want to

10   send it out in English and in Spanish.

11          MS. MIRER:  Exactly, yeah.

12          THE COURT:  But can only approve English.  And, as you

13   all know, I do not speak Spanish.  Okay.  But other than that,

14   you don't have any authority that says the defendant is -- that

15   I have the authority to order the defendant to post notice of a

16   lawsuit against the defendant in the defendant's premises.

17          MS. MIRER:  Only that I know that it's been done in

18   other cases where we believed that it was -- there was a need

19   to communicate to the people that they were -- that this was

20   not viewed as something that they should be afraid of.

21          THE COURT:  Well, that's a different question of

22   whether it should be posted in the defendant's location.

23          MS. MIRER:  Well, I mean, one of the concerns that we

24   have, obviously, is that there's fear on the part of current

25   employees and some of the current employees know where former

F3czramm                      Motion

1    employees are.  And the problem is that if, given this

2    population finding people who may no longer work there, but,

3    maybe the only way to find them is through a posting of the

4    notice at the work place.

5         THE COURT:  I don't understand that.  Because if it's,

6    if your theory is that a current employee will tell his buddy,

7    a former employee, the current employee is going to get notice,

8    whether it's posted at the work place or gets it via mail or

9    e-mail.  So what does posting the notice at the restaurant add

10   to that?  I'm all in favor of trying to figure out ways of

11   getting notice to all of the affected class.  I'm just not sure

12   how requiring the defendant to post it in the restaurant

13   advances that cause.

14        MS. MIRER:  Well, your Honor, as I have said in the

15   past, we have had situations where that has been allowed

16   because there's been a concern that the employees, if it's not

17   posted in the defendant's premises, might feel somehow afraid

18   to respond.

19        THE COURT:  Okay.  Well, I'm not -- I hear you.  I'm

20   not -- I don't think I buy that.  At least based on the

21   employees I heard from, I didn't see a whole lot of fear and

22   quaking on their parts.

23        MS. MIRER:  I agree with you, not in those employees.

24   Sure.

25        THE COURT:  Okay, all right.

1          Mr. Restituyo, we're not dealing with the motion to

2     dismiss here.  We're dealing with the motion for collective

3     certification which, as we all know, is a very low threshold.

4     I look at these affidavits and I see a bunch of people who work

5     at both restaurants.  They seem to allege common practices

6     between the two restaurants.  We are talking a small, you know,

7     sort of, even as we heard during the RICO hearing, Mr. Liberato

8     owned both restaurants.  He's back and forth.  They seem to be

9     two restaurants of a common enterprise.  So what is the

10    evidence that have different wage policies?

11         MR. RESTITUYO:  So, your Honor, yes, my client owns

12    two restaurants and actually they're owned by two separate

13    corporations, but let's begin with the evidence here.

14         So to be clear, there are five affidavits submitted by

15    Ms. Mirer, not six.

16         Next, only one employee who is a Burnside employee

17    solely and that individual Mr. Salerno, you know, hasn't been

18    there since at least 2010.

19         As regards to the other affidavits that she submitted

20    regarding employees that actually did time in both places --

21         THE COURT:  Right.

22         MR. RESTITUYO:  -- right, those are the allegations,

23    the reality that they got paid at 183rd.  In other words, their

24    home base was the 183rd location.  And other than hearsay

25    statements to say, hey, the wage waitresses over there got paid

F3czramm                          Motion

1    the same or the chefs over there worked the same way, I could

2    say that about any local diner, there is a waitress at the

3    local diner that gets paid hourly and makes tips.  That, in and

4    of itself, isn't enough to declare there is a common policy as

5    between the two restaurants.  Certainly there is no evidence

6    here that's not, you know, hearsay evidence.

7              THE COURT:  Were there different policies?

8              MR. RESTITUYO:  Your Honor, to be frank --

9              THE COURT:  You don't know?

10             MR. RESTITUYO:  I don't no, exactly.  I mean, the

11   record doesn't indicate it and I don't know.

12             THE COURT:  Okay.

13             MS. MIRER:  It's certainly a conditional

14   certification.

15             THE COURT:  Well, that's exactly what I was just about

16   to -- I mean, if there is not, you can always move to

17   decertify.  And it's not like this is final.

18             Anything else you want to say about whether or not

19   it's going to be certified?

20             MR. RESTITUYO:  No, your Honor.  Then my next points

21   have to do with notice.

22             THE COURT:  The notice, go ahead.

23             MR. RESTITUYO:  Your Honor, I think we have three

24   points with regard to notice, which I think we're kind of fair.

25   One may surprise you right now.

F3czramm                    Motion

1          So the first is that, you know, we allege that notice

2     has to be neutral and unbiased.  And that's the --

3          THE COURT:  Let me -- you can hold your breath on

4     this.  The current notice is inadequate.  I'm not going to

5     approve it.

6          MR. RESTITUYO:  Fair enough.  To that end, we were

7     going to suggest that the notice is probably premature, given

8     that there is no decision on the non-Liberato defendants, but I

9     presume that, to the extent your Honor decides on that, that

10    will be fine.

11         To address your points with regard to three years.

12    I'm not sure that there's been any indication that there was,

13    you know, willful conduct by the client.  So I don't know why

14    we would expand the notice to three years versus two years.  I

15    haven't seen a showing other than, you know, mere conclusory

16    allegation that there was willful conduct.  I haven't seen a

17    showing why a notice would expand three years.  And I know your

18    Honor was throwing that number out there.

19         THE COURT:  Well, I was, largely because I don't know

20    whether we'll get to the point where the Court can say as a

21    matter of law any violation was not willful.  But I would

22    rather have those workers in the pool and be subject to a

23    motion saying they're out because they're time barred because

24    in fact there was not a willful violation, and they were

25    employees more than two years prior, than have it be the other

F3czramm                          Motion

1    way around, that you've got employees who got legitimate

2    claims, and because the violation was willful, but they were

3    not included within the collective -- again, this is only --

4    this is step one -- if in fact there is no evidence of

5    wilfulness, then you cannot -- if there are employees in that

6    class, that is, who would be timely -- who are not timely for a

7    two year Statute of Limitations but timely for three, then you

8    have a motion for summary judgment against them.

9              MR. RESTITUYO:  And we understand that, your Honor.

10   And, you know, I'm not really going to push too hard on this,

11   but it must be alleged, and I'm not sure that it was adequately

12   alleged at least.  So other than that --

13             THE COURT:  I think there's probably -- I think the

14   complaint is adequate to allege wilfulness.

15             MR. RESTITUYO:  All right.  Fair enough.

16             Lastly, your Honor, as regards the notice.  And this

17   should not come as much of a surprise given some of the

18   testimony in regard to the -- that we heard in the RICO action,

19   is that we would ask that your Honor stay the distribution of

20   the notice pending on defendants' motion to disqualify Ms.

21   Mirer as counsel, for a number of reasons.

22             One, I think it's more -- there is more than enough

23   evidence to suggest that all plaintiffs in the Ramirez action

24   are Laundry Worker Center.  There is some question as to what

25   Ms. Mirer's relationship is with regard to Laundry Worker

F3czramm                         Motion

1    Center.  She, in fact, provided testimony to the Court

2    suggesting that she, on a previous occasion, actually got them

3    involved in one of her litigations.  So certainly we think that

4    we would hate for the notice process to be a recruitment effort

5    for Laundry Worker Center, which I'm not sure whether it will

6    or will not be, there is a particular taint.

7           Our motion to disqualify will go into depth as to the

8    conflicting interest between Laundry Worker Center and the

9    potential class members, which are not necessarily one and the

10   same.  Surely they have similar interests at time, but other

11   times they will not.  And there is going to be the issue of

12   whether at some point Ms. Mirer may become a witness to

13   either -- certainly probably in the RICO action, and there is a

14   chance that she may become a witness in the FLSA action.

15          THE COURT:  How could she be a witness in the FLSA

16   action?

17          MR. RESTITUYO:  Well, your Honor, to the extent that

18   Laundry -- so defendants have counterclaims, answers to

19   counterclaims, and the counterclaims allege, you know, certain

20   defenses based on these plaintiffs' conduct with regard to how

21   they conducted themselves at work certainly as regards to the

22   retaliation claims.  I'll give you an example, you know, with

23   regard to the retaliation claims, right.  Though, though

24   defendants have one position as to whether there was

25   retaliation or not, plaintiffs certainly have another.

F3czramm                      Motion

1    Plaintiffs proceeded via other mechanisms for -- in addition to

2    filing here, other mechanisms for filing their retaliation

3    claims.  To the extent that Ms. Mirer is Laundry Worker Center

4    and was sort of behind the scenes orchestrating that, there is

5    a possibility that she may be called as a witness.

6           Now I'm not suggesting that that's a certainty.  Our

7    motion, to be frank, is a good two-thirds of the way through

8    and we're pulling up case law and we should be prepared to file

9    it by the weekend, but we think there is a possibility.  And

10   all we're asking is that the Court stay, you know, the

11   notice -- we grant that there's going to be this conditional

12   class certification pending a resolution on that.

13          THE COURT:  Ms. Mirer.

14          MS. MIRER:  I think such a motion would be baseless

15   and would be -- I represent these plaintiffs in a FLSA action.

16   Whether we have a motion to dismiss the RICO claims, we don't

17   think there is any basis in law for them.  And we're going to

18   be filing a motion to dismiss all of their counterclaims.  If

19   they're trying to make a -- if they're trying to allege or push

20   the cases of the Laundry Workers Center and a couple of

21   individual workers together in a counterclaim to try to see

22   that there's somehow the fact that I might, under certain

23   circumstances, represent both, there is no conflict.  I'm

24   representing people with respect to the issue of whether or not

25   they are being unfairly paid, and that's it.

F3czramm                        Motion

1            THE COURT:  Help me -- I can't see -- I can see the

2   Laundry Workers Center Which may have broader goals relative to

3   worker fairness and --

4            MR. RESTITUYO:  Right.

5            THE COURT:  -- and the like than an individual

6   plaintiff does.  An individual plaintiff presumably, or most of

7   the class, maybe not all of them, some of them may have signed

8   on and believe in broader goals and using this case for broader

9   goals, but my guess is that the class as a whole, their

10  motivation is monetary.  So where is the conflict?

11           MR. RESTITUYO:  So --

12           THE COURT:  Where is the conflict that is different

13  from any time you have a lawyer, and there are a bunch of them,

14  who represent unions and they represent individual employees.

15           MR. RESTITUYO:  Right.

16           THE COURT:  And that is not a conflict.

17           MR. RESTITUYO:  Fair enough.  So, your Honor, I'm

18  going to briefly just -- it just so happens in this case all

19  the plaintiffs in the Ramirez action are Laundry Worker Center,

20  right, but --

21           THE COURT:  But let me just interrupt you for a

22  second.

23           MR. RESTITUYO:  Yeah.

24           THE COURT:  I find this sort of interesting.  Let's

25  suppose -- forget Laundry Center Workers.  Suppose they were

F3czramm                         Motion

1     all members of the ACLU.

2              MR. RESTITUYO:  Right, so --

3              THE COURT:  So what?

4              MR. RESTITUYO:  So here -- so wait.  And I'm saying --

5     I apologize.

6              THE COURT:  Okay.

7              MR. RESTITUYO:  The majority of those plaintiffs

8     actually happen to be ex-employees.  And that's important that

9     the majority of ex-employees and that the few current employees

10    are actually, you know, listed as on Laundry Worker Center's

11    website as sort of, you know, volunteer organizers.  And they

12    may have guarantees that the other employee class members do

13    not have.

14             Why is that important?  Because Laundry Worker Center

15    may not care whether Mr. Liberato goes out of business, but the

16    employees may very well be concerned for their future

17    wellbeing.  Laundry worker center may want to set an example of

18    Liberato, for whatever reason.  The employees may simply want

19    to ensure there livelihood and get their money and go on their

20    way, right.

21             For laundry workers, this is part of an overall

22    campaign.  This is one in however many other campaigns they're

23    going to have.  For the class, for the majority of the class,

24    certainly the employees that are in there, this is going to be

25    personally quite, you know, intimate to their livelihood.

F3czramm                         Motion

1          This is -- you know, there are going to be as regards

2     the union context, right, Laundry Worker Center may be

3     interested in creating a union that may not necessarily be part

4     of what the other employees want.  Laundry worker center may be

5     interested in having under union guidelines certain laws

6     followed to the letter of the law, and there may be certain

7     other employees.  And we all know they exist, undocumented,

8     unwilling to pay taxes, et cetera, that may not have the same

9     interest.

10          So at least on those fronts there are interests which

11     do not necessarily align.  Certainly everybody wants to get

12     paid, and we understand that.  But when you get down to the

13     nitty-gritty of things, not everybody is in the same position,

14     right.  So if there is a current employee at Liberato that's a

15     Laundry Worker's member center that's told don't worry if they

16     go bust we got you another job, her 40 other employees that are

17     working there don't have that freedom.  And so they may not

18     necessarily be seeing eye to eye when it comes down to --

19          MS. MIRER:  This is --

20          MR. RESTITUYO:  -- pursuing the case.

21          MS. MIRER:  -- such fantasy.

22          THE COURT:  That's not -- my issue, accepting

23     everything you say, is that's not a legal conflict of interest.

24     That's a problem of there may well be different interests

25     within the class.

F3czramm                    Motion

1            MR. RESTITUYO:  Okay.

2            THE COURT:  That's always true.  You can always have

3     situations where some employees are looking for a big pay off,

4     other employees are satisfied with take a reasonable pay off

5     and let's get going.  That's --

6            MR. KRASELNIK:  And they're always former and current

7     employees anyway.

8            THE COURT:  As part of the class.

9            MR. RESTITUYO:  You've asked me to outline the class

10    differences, right.

11           THE COURT:  Okay.

12           MR. RESTITUYO:  We can go -- so now as regards the

13    Laundry Workers Center differences.  So to the extent that

14    like -- and thank God Mr. Kraselnik spoke up -- this may not be

15    an issue if Mr. Kraselnik was sending out the notice.  Because

16    certainly there is no link between him and Laundry Worker

17    Center.  And there is no indication, at least as far as I know,

18    that the process will be tainted in a way that this will be a

19    sort of a campaign by Laundry Worker Center to gather more

20    members.

21           THE COURT:  Okay.  Well, this probably isn't going to

22    satisfy all of your concerns, but there will be an order that

23    says any data that's provided relative to these employees, may

24    be -- employees and former employees, may only be used for this

25    litigation.  They may not be shared with anyone else, including

F3czramm                      Motion

1    Laundry Workers group or whatever, the Laundry Workers, that's

2    what this is all about.  So, you know, I'm not going to stop

3    you from making your motion, but it's not being readily

4    apparent to me that you've got a winning motion to disqualify.

5              MR. RESTITUYO:  Fair enough.

6              But, your Honor, to say that, you know, this -- all

7    information may be gathered, that will be gathered will not be

8    shared with Laundry Worker Center -- if at some point it's

9    determined that Ms. Mirer was Laundry Worker Center, then what?

10             MS. MIRER:  Your Honor, I don't understand what I was

11   Laundry Worker Center means.  I mean, I am an attorney.  I

12   represent clients.  I represent clients to the best of my

13   ability.  I fight for my clients.  Whether they're

14   organizations or individuals, I do not allow conflicts of

15   interest to get in the way.

16             MR. RESTITUYO:  Your Honor, Ms. Mirer uses Mr. Aran,

17   the chair, the founder of Laundry Worker Center as her

18   translator, one.

19             She said on the record this -- this was -- there's

20   transcript to this effect; that in the dishes action she was

21   involved and she brought in Laundry Worker Center to get

22   involved in that campaign to help her resolve the matter

23   presumably.  So certainly --

24             MS. MIRER:  Your Honor --

25             THE COURT:  I don't think that means that she is

F3czramm                    Motion

1   laundry workers.  Attorneys can bring in a third party mediator

2   at any time.  Look --

3          MR. RESTITUYO:  Okay.

4          THE COURT:  -- I understand your frustration with this

5   situation.  I truly do.  You know, I'm only doing what I can

6   do.  And what I can do is what I've told you guys I'm going to

7   do, which is I'm going to lance the boil.  And what we're going

8   to do is we're going to go as fast as possible to get to trial,

9   because that will give your client the peace he wants, it'll

10  give the plaintiffs the opportunity to demonstrate that they

11  are being abused and mistreated by their employer and, if so,

12  they will get a judgment.  And, as you know, the more of this

13  litigation that you all are engaged in, her little ticker just

14  keeps going.  And if they prevail, your client is paying her

15  fees.  You know that.

16         So, again, make your motion.  I'm happy to review it,

17  but I'm not going to stop anything for that.  Because based on

18  what I'm hearing, I'm not convinced that that is a winning

19  strategy at the moment.

20         Anything else you want to tell me relative to the

21  notice on collective certification?

22         MS. MIRER:  Your Honor, I think they've indicated that

23  they want something in the notice about LWC and fees, I mean

24  the LWC is not entitled to fees in this case.

25         THE COURT:  LW --

F3czramm                     Motion

1          MS. MIRER:  Not fees, but to the Laundry Worker Center

2     was what?

3          MR. RESTITUYO:  We asked they be excluded from the

4     process.

5          THE COURT:  They're not going to be involved in the

6     process.

7          MR. RESTITUYO:  Right.  So I think that was the

8     affirmative.  We also asked --

9          THE COURT:  But that doesn't mean the notice should

10    discuss them.

11         MR. RESTITUYO:  No, no, no no.  We ask -- I don't

12    recall --

13         THE COURT:  Here's what we're going to do.  I'm going

14    to give you my thoughts on the notice.

15         You're going to be directed to meet and confer and try

16    again on a new notice that satisfies the directions that I'm

17    giving you.

18         What I want to do right now -- is there anything else

19    specifically, though, that you want to make sure that I think

20    about relative to the notice?

21         MR. RODRIGUEZ:  Yes.  I want to make one more point,

22    your Honor.  I guess the main concern we have is that we don't

23    want Laundry Worker Center to undermine the Court's supervisory

24    role on the dissemination of the notice.

25         So in the RICO case there was plenty of testimony to

F3czramm                          Motion

1   the effect that these guys use heavy-hand tactics; they'll go

2   to people's apartments and they just use aggressive tactics in

3   order to bring people aboard, and that they actually, you know,

4   disseminate the defamatory statements that are false, and

5   basically that they're going to undermine the Court's

6   supervisory process.

7          THE COURT:  Okay.  So, again, my order is going to be

8   that this data cannot be shared with anyone else.  I have

9   confidence that Ms. Mirer is going to comply with that.  So the

10  laundry worker is not going to have this information.  They're

11  going to -- the data will be held, the contact information is

12  going to be held by Ms. Mirer.  It's going to be limited, to

13  the extent the defendants have it, a mailing address, and an

14  e-mail address.  No other information; telephone number is not

15  going to be disclosed, social security number is not going to

16  be closed, assuming that they have it, that is not to be

17  disclosed.

18          So anything further you think I should know before I

19  take a five minute break?

20          MS. MIRER:  No, your Honor.

21          THE COURT:  Relative to the notice?  Okay.  Five

22  minutes.  Don't go far.

23          (Recess)

24          (After the recess)

25          THE DEPUTY CLERK:  All rise.

F3czramm                    Motion

1          THE COURT:  Be seated.  Okay, thank you.

2          In light of your submissions and what I've heard

3     today, I'm prepared to render an oral decision on both of the

4     motions now before me.

5          For reasons that I will explain, the non-Liberato

6     defendants motion to dismiss the complaint is granted and

7     plaintiffs' motion for conditional certification is granted,

8     insofar as it seeks authorization to send a notice to the

9     putative group, but the proposed notice is rejected as

10    insufficient.  As I discuss more below, I'll ask the parties to

11    submit a revised proposed notice no later than next Wednesday,

12    March 18.  I'm also prepared to dismiss the tenth, eleventh,

13    twelfth, and thirteenth causes of action for lack of subject

14    matter jurisdiction, although I will permit plaintiffs to brief

15    that question before I do.

16         Under FLSA, the definition of employer relies on the

17    very word it seeks to define:  "Employer includes any person

18    acting directly or indirectly in the interest of an employer in

19    relation to an employee."  From Irizarry versus Catsimatidis,

20    722 F.3d, 99, 103, Second Circuit, 2013, quoting 29 U.S.C.

21    203(d).  The Second Circuit has rejected a formalist approach

22    to determining who can be sued as an employer.  Instead, it has

23    established a four factor test to determine the economic

24    reality of the relationship.  The questions are whether the

25    alleged employer, one, had the power to hire and fire

F3czramm                          Motion

employees, two, supervised and controlled employee work

schedules or conditions of employment, three, determined the

rate and method of pay and, four, maintained employment

records.  It's from Irizarry 722 F.3d, at 104-05.  This is the

so-called Carter test.

     When determining whether an individual within a

company is personally liable for damages as an employer, courts

apply the four-factor test articulated in Carter and consider

other factors bearing on the overarching question of whether

the alleged employer possessed the power to control the workers

in question.

     Although it's a open question, both parties have

assumed, as will I for the purposes of this motion, that the

question of employer liability under the New York Labor Law is

the same as under FLSA.

     For the purposes of deciding the motion to dismiss, I

have considered information contained in the affidavits

submitted in support of the conditional certification as a

collective action and the affidavits submitted in support of

plaintiffs' motion for preliminary injunction dated October 9,

2014, and the affidavit and attachment that was handed up to

the Court today.  Defendants correctly point out that such

materials are generally not considered when evaluating the

sufficiency of pleadings.  There is no language in the third

amended complaint that incorporates by reference the

1    plaintiffs' affidavits in support of conditional certification

2    or in support of their motion for preliminary injunction, and

3    the affidavits were certainly not attached to the complaint as

4    exhibits.  Thus, the Court could properly ignore all such

5    factual allegations when deciding defendants' motion to

6    dismiss.  Even considering all of those materials, however, the

7    plaintiffs have not adequately alleged the non-Liberato

8    defendants are employers within the meaning of FLSA.

9            First, allegations against Romeo, last name unknown,

10   and Fernando Liberato appear only in paragraphs 19 and 24, both

11   conclusory allegations.  Plaintiffs do not discuss these

12   defendants in their opposition brief at all.  Even assuming

13   that the claim against them was not abandoned because

14   plaintiffs failed to address them when opposing defendants'

15   motion, plaintiffs have not alleged anything close to employer

16   status as defined in Irizarry.  I'll get to the allegations

17   against Fernando Liberato, also known as Raphael, that were in

18   the most recent affidavit in a little bit.  Nonetheless, I can

19   tell you not to give up.  What's going to happen, the case

20   against Romeo, last name unknown and Fernando Liberato will be

21   dismissed.

22           Second, in paragraph 18 of the complaint, plaintiffs

23   allege that Victor Liberato is an employer under FLSA because

24   he was a "supervisor/manager."  Omar Taveras asserted in his

25   affidavit in support of the collective action certification at

1    paragraph 17 that Victor Liberato told him that if he did not

2    sign a false payroll record, he would be fired.  The Taveras

3    affidavit barely touches on two of the Carter factors.  It

4    somewhat supports the allegation, which plaintiff never

5    actually articulated, that Victor Liberato maintains employment

6    records, and it may be related to whether he had the power to

7    hire and fire employees.  The problem is that it does not go so

8    far as to indicate that Victor Liberato himself would fire him,

9    and it reads more like Victor was predicting what the boss,

10   presumably Manuel Liberato, would do.  But more important,

11   there is no allegation that even remotely suggests that Victor

12   Liberato had the authority to supervise or change employee work

13   schedules or to determine the employees' rate of pay.  I've

14   reviewed the affidavits submitted today.  Allegations in that

15   that an employee told Victor she would be out one day because

16   she was ill simply does not equal an allegation that Victor is

17   an employer.  I think all of us in our experience have had

18   circumstances where an employee notifies another employee that

19   they will be out.  That does not make that second employee an

20   employer for purposes of FLSA.  The Circuit has indicated that

21   after the economic factors, courts must look to the totality of

22   the circumstances to determine whether a defendant had

23   "functional control."  Unlike the president of the hotel held

24   liable in Moon v. Kwon the case relied on by plaintiffs, there

25   is nothing in the complaint or any other affidavits I have

F3czramm                          Motion

considered from which I could infer that Victor Liberato

exercised "operational control" over the employees at Liberato

Restaurant the.  Accordingly, he too is dismissed from the

complaint.

          Next, Nelson Gomez.  Paragraph 20 of the third amended

complaint contains conclusory allegations that he is a manager.

Certain of the plaintiffs' affidavits in support of conditional

certification also mention him as a manager.  Luis Espinal, for

example, alleges in paragraph 14 of his affidavit in support of

conditional certification that he once heard Nelson Gomez tell

other workers that "they must not ask about what" the book

containing their time sheets says.  Javier Guerrero's affidavit

in support of plaintiffs' motion for preliminary injunction

asserts that Nelson Gomez told him that his hours would be

reduced.  Finally, defendants in their RICO action allege that

Gomez is a manager.  But none of this goes to anything other

than him having the title of manager.  Plaintiffs have not

alleged that Nelson Gomez set their pay or hours, maintained

employment records, or hired or fired employees.  Put

differently, putting everything together, there is no

suggestion that Nelson Gomez is an employer under the FLSA's

definition.  Accordingly, the FLSA and New York Labor Law

claims are dismissed against Nelson Gomez.

          I'll come back to the sexual harassment claims.

          As to Lucila Gomez, plaintiffs again rely on vague

1    allegations that she told plaintiffs to sign a book to receive

2    their pay.  See, for example, the Oscar Ramirez affidavit in

3    support of collective certification, paragraph 11.  The

4    complaint at paragraph 32 also specifically mentions that Lucy

5    Gomez made the defendant sign a document in order to be paid.

6    But assuming the truth of all of the things that plaintiffs are

7    alleging, which I must do at this stage of the litigation,

8    that, at most, might establish one of the Carter factors that

9    Lucila Gomez in some sense maintained employee records.  But

10   there is no allegation that she had the power to set wages,

11   hire or fire, or determine employees schedules, nor are there

12   any allegations that demonstrate any operational control over

13   Liberato's employees.  Accordingly, the case will be dismissed

14   against Lucila Gomez.

15           As to both Lucy Gomez and Fernando Liberato, also

16   known as Raphael Liberato, I do not find the tape that was

17   attached to the affidavit that was handed up today, even

18   assuming that it is an accurate translation -- which there

19   would be some question about -- shows that Lucy Gomez or

20   Fernando Liberato were employers.  The tape seems to suggest

21   they were explaining their understanding of the employer's

22   policy, but that alone does not make them an employer.

23           As to Sarah Vallejo, plaintiffs rely on vague

24   allegations that she told employees that if they did not like

25   their pay, they were free to leave.  See, for example, the

F3czramm                          Motion

1   Guillermo Alvarez affidavit in support of conditional

2   certification at paragraph four.  Moreover, defendants describe

3   her as a "shift manager at Liberato Restaurant" in paragraph 93

4   of their RICO action.  But nowhere is there any allegation that

5   she has the power to set hours or wages, hire or fire, or

6   maintain employment records.  There are no allegations tending

7   to show that she has any operational control over Liberato's

8   employees; accordingly, the case is dismissed against Sarah

9   Vallejo.

10          Finally, Sixta Rosaura Gomez, sued as Nana, was

11   allegedly implicated in plaintiffs' affidavits in support of

12   their motion for preliminary injunction.  The plaintiffs allege

13   in those papers that she was "involved in" the decision to

14   reduce the hours of some employees.  This allegation goes to

15   only one of the Carter economic reality factors.  There is no

16   allegation that Ms. Rosaura Gomez could hire or fire employees,

17   maintain employment records, or determine rates of pay.

18   Moreover, although paragraph 23 of the complaint alleges in a

19   conclusory way that Ms. Rosaura Gomez had "supervisory control"

20   over the plaintiffs, this is exactly the kind of threadbare

21   recital of the elements of a cause of action that does not

22   suffice to plead her status as an employer under FLSA.

23          Accordingly, plaintiffs' FLSA and New York Labor Law

24   actions are dismissed with prejudice as against Fernando

25   Liberato, also known as Raphael, Victor Liberato, Nelson Gomez,

Lucy Gomez, Sarah Vallejo, Nana, and Romeo last name unknown.
The third amended complaint remains against M.S. Restaurant
Corp., M.L. San Jose Enterprises corp., and Manuel Liberato.

I want to say a few words about plaintiffs' claims
under the New York City and New York State Human Rights Law for
unlawful discrimination based on pregnancy and unlawful sexual
harassment.  That's the tenth through thirteenth causes of
action in the third amended complaint.  "Failure of subject
matter jurisdiction is not waiveable and may be raised at any
time by a party or by the Court sua sponte.  If subject matter
jurisdiction is lacking, the action must be dismissed."
That's Lyndonville Savings Bank & Trust versus Lussier, 211
F.3d, 697, 700-01, Second Circuit 2000.  Because complete
diversity is lacking in this matter, the parties may pursue
their state law claims in federal court only if those claims
fall within the Court's supplemental jurisdiction.  The
permissible scope of the Court's supplemental jurisdiction is
set out in 28 U.S.C. Section 1367(a).

The Second Circuit continues to rely on the language
from Gibbs requiring that state claims share a "common nucleus
of operative fact" with federal claims before a federal court
can exercise subject matter jurisdiction of those claims.  Even
courts that have adopted the more permissive "loose factual
connection" standard hold the mere fact that claims arise from
a single employment relationship is not, by itself, sufficient

F3czramm                      Motion

1    to warrant the exercise of supplemental jurisdiction.  I refer

2    you to Berg v. BCS Financial corp. 372 F. Supp. 2d, 1080, 1093,

3    Northern District of Illinois 2005.

4            The claims that certain plaintiffs were sexually

5    harassed and were wrongfully discharged due to pregnancy may

6    state a cause of action, but they are expressly alleged as

7    state law causes of action.  These claims are entirely separate

8    from the federal FLSA claims that give this Court subject

9    matter jurisdiction.  Plaintiffs are, therefore, ordered to

10   show cause no later than March 23, 2015 why this Court should

11   not dismiss the tenth, eleventh, twelfth and thirteenth causes

12   of action for lack of subject matter jurisdiction.  Defendants

13   may be, but not need not respond.  Any response is due

14   March 27th 2015.

15           Turning now to the motion for conditional

16   certification.  As you know, this motion focuses on step one of

17   a two-step method for determining the appropriateness of FLSA

18   certification that was approved by the Second Circuit in Myers

19   versus Hertz, 624 F.3d, 537 at 554-55, Second Circuit 2010.  At

20   this stage plaintiffs must make only a modest factual showing

21   that they and potential opt-in plaintiffs were victims of an

22   unlawful common policy or plan.  Plaintiffs' burden at this

23   stage is not non-existent, but it is quite modest.

24           In this case, plaintiffs' 12 affidavit have more than

25   met this low bar.  Each affiant has alleged that defendants'

F3czramm                        Motion

1  policies and practices violated FLSA.  Although the affidavits

2  differ slightly, I credit them at this stage.  For example,

3  Juana Cruz Hernandez asserts that neither she nor her

4  co-workers ever received a record of any tips received, that

5  neither she nor her co-workers received overtime for hours

6  worked in excess of 40 per week, and that she believed that her

7  co-workers were subjected generally to the same treatment that

8  she was.  The other affidavits are largely consistent.  The

9  fact that 12 affiants were subject to similar policies is

10  itself evidence that any violation is likely the result of a

11  broadly-applicable policy.

12       For these purposes and at this stage of the

13  litigation, I do not credit the defendants' arguments that the

14  Burnside location is distinct from the 183rd Street location.

15  First, the affidavits describe Liberato Restaurant as one

16  establishment with two locations.  This suggests that a policy

17  in place at one location would also apply to the other

18  location.  Second, several of the employees, specifically

19  Geronimo Herculano, Mirna Reyes Martinez and Omar Taveras

20  worked at both locations and appear to describe uniform

21  policies in both restaurants.  Collectively, the affidavits

22  make the required modest showing that the policies in place at

23  Burnside were applicable to all non-managerial employees and

24  are more than sufficient to meet the threshold for the

25  conditional certification at this stage.

F3czramm                         Motion

1              Defendants will have the opportunity to move to

2      de-certify the collective after the close of discovery, as

3      described in Myers.  But for now, plaintiffs have made the

4      modest showing that the first stage requires.

5              As to the method and content of the proposed Notice

6      and Consent, it is the Court's responsibility to "monitor

7      preparation and distribution of the notice to ensure that it is

8      timely, accurate and informative."  She Jian Guo, that's 2014

9      Westlaw, 5314822 at page 4 quoting Hoffman-La Roche versus

10     Sperling, 493 U.S. 165, 172.  Because I have a large number of

11     concerns about the notice as it currently stands, I'm directing

12     the parties to meet and confer about the notice and to submit a

13     revised version of the notice, consent and order not later than

14     March 18.  Ms. Mirer, I note that many of the flaws with the

15     notice were identified by the defendant in his opposition, but

16     you did not respond to those identified issues.

17             First, I have a number of procedural issues.  Because

18     I understand that waiters, busboys and other low-level

19     restaurant workers may move with some frequency, I think the

20     use of e-mail, in addition to the U.S. mail, which may not be

21     forwarded to the intended recipient, is appropriate.  I do not

22     see any reason for phone numbers, Social Security numbers or

23     dates of employment to be discoverable, however.  I will order

24     that any information provided to plaintiffs' attorney for the

25     purpose of this mailing, including the names and addresses of

F3czramm                          Motion

former employees, is to be used solely for purposes of this

litigation and is not to be shared with anyone for any purpose.

That specifically includes the Laundry Workers Center and its

various officials.  I will not order the defendants to post the

notice inside the restaurants, nor will I enjoin any labor

organization from raising awareness about the action.  But I do

caution you, Ms. Mirer, that I recognize the connection between

you and various labor organizations, and I will not hesitate to

take appropriate action if any organizations promulgate false

or misleading information regarding this lawsuit.

        Second, the parties dispute the proper date to include

on the notice.  Plaintiffs have made no showing that the class

should be defined as people who are employees since June 4,

2011; that is, there should be equitable tolling in the interim

nine months.  Because I'm not prepared to make a willfulness

finding at this date, I will permit the notice to reach back

three years from the date of the notice, not from the date of

filing of the complaint, with the understanding that challenges

to the timeliness of individual plaintiffs' actions can be

raised at a later date.

        Finally, I'm inclined to agree with the defendants

that a 45-day period for opting in should be sufficient,

although I was playing with moving it back to 30, but I'm going

to leave it at 45.  As I've told the parties on numerous

occasions, the best way to deal with this case, to get the

F3czramm                    Motion

1   workers the money they are owed, if any, and to get

2   Mr. Liberato the peace that he desires, is to make sure that we

3   get to a just resolution of this lawsuit quickly.  By now the

4   workers at both restaurants are doubtless already aware of the

5   dispute, and there is no reason to give them three months to

6   decide whether or not to opt in.

7          As to the substance of the notice, I also have a

8   number of serious concerns.  That's why I'm ordering the

9   parties to meet and to work on a new jointly-proposed notice to

10  be submitted no later than March 18th.  If the parties cannot

11  agree on the joint notice, they should agree on as much as

12  possible and then point out the specific areas of disagreement

13  with plaintiffs' proposed language and defendants' proposed

14  language included so there will be one document with

15  plaintiffs' proposal and defendants' proposal.  All of that is

16  to be submitted on March 18th.  I am confident that you should

17  be able to agree.  The fact is that a notice is going to go out

18  one way or the other, so it does nobody any good to fight over

19  what I call "happy to glad" differences in wording.  I do have

20  some guidance for the parties on what I expect to see in the

21  new notice.

22         At the outset, the notice should not look like an

23  order from the Court.  I refer the parties to docket number 14

24  CV 2926, another FLSA collective action that contains a Notice

25  of Lawsuit that I approved.  That notice is a good "go by" for

F3czramm                    Motion

1   what a notice should look like, at least in this courtroom.

2          The notice should state in plain English that the

3   Court has not determined that Liberato Restaurant has done

4   anything wrong.  This statement need not be bolded an all caps,

5   as proposed by defendants, but it needs to be on the front page

6   in clearer language than it was in the proposed notice.

7   Similarly, the phrase court-ordered notice should be replaced

8   by Court-authorized notice.

9          Second, the defendant should be able to have a full

10  paragraph explaining their position.  The plaintiffs' proposed

11  one sentence is insufficient.  I do not accept, however

12  defendants' position that the notice should include a

13  discussion of the RICO action.  That would not be appropriate,

14  as it does not relate to the merits of the FLSA case.

15         Third, the notice should clearly explain what might be

16  required of prospective participants in the lawsuit, including

17  their potential discovery obligations.

18         Fourth, the notice is patently improper with respect

19  to attorneys.  Ms. Mirer, you can not assume that all

20  prospective opt-in plaintiffs will choose to be represented by

21  you.  You must make it clear that Mr. Kraselnik is playing a

22  role in the representation, and more importantly, that

23  potential plaintiffs may elect to hire their own attorneys.

24  The notice should also provide contact information for

25  defendants' attorneys if they wish to be listed on the form.

F3czramm                        Motion

1              It is unreasonable to require the notice to include a

2       specific percentage of any recovery that will be paid as

3       attorneys fees, particularly because any award of fees will

4       likely be subject to this Court's approval.  I also side with

5       the majority of the courts in this district that permit opt-in

6       plaintiffs to mail the consent forms to plaintiffs' counsel.

7       Because I have directed that the notice should contain language

8       specifically notifying opt-in plaintiffs of their right to

9       obtain their choice of counsel, there is less of a concern

10      about improperly endorsing plaintiffs' counsel.

11             Finally, as defendants indicated, there should be a

12      clear statement that putative opt-in plaintiffs should not

13      contact the Court with questions regarding the lawsuit.

14             I look forward to receiving the parties' submissions

15      next week.  While I will not be publishing an order listing the

16      specific recommendations that I just detailed, if the parties

17      have a question prior to Wednesday, you are invited to jointly

18      call chambers and I promise to sort it out swiftly.

19             Let me stress, your submission should clearly show

20      what you agree on, and if there are provisions on which you can

21      not agree, you should both set out the language you propose.

22      Please note, this is going to be like a baseball arbitration.

23      I will pick one version or the other.  I am not going to take

24      the time to rewrite one or the other of your submissions to

25      somehow split the baby.  So be reasonable on what you are

F3czramm                          Motion

```
 1   proposing.  I think if you do that, you'll be able to reach

 2   agreement.

 3            I also concur that the notice should be sent out in

 4   Spanish.  You need to concur as well, once we have an agreed

 5   upon English language.  Ideally, if you can agree on one

 6   translator to create Spanish language version, that seems to be

 7   ideal.

 8            So let's talk about the schedule going forward.  How

 9   long does the defendant need -- okay.  How long is the

10   defendant going to need to produce the names and addresses to

11   the plaintiff?

12            MR. RESTITUYO:  I'm going to say two weeks, your

13   Honor.

14            THE COURT:  Can you do it by the 23rd?  That's, from

15   today that's a little less than two weeks.

16            MR. RESTITUYO:  I have to ask my client, but sure.

17            THE COURT:  Well, I'm inclined to order that.  And if

18   it really can't be done, which I'm skeptical that it can't,

19   this is not a huge restaurant.  You've known this is coming.

20   So, if it just can't be done -- if it can't be done, it can't

21   be done, but that's kind of where I'm leaning to.  From the

22   time that the names and address are provided, how long is it

23   going to take plaintiff to get the notices out?

24            MS. MIRER:  It can be a very quick turnaround time

25   from my office.  It shouldn't take more than a week.
```

F3czramm                    Motion

1          THE COURT:  I was thinking of giving you a little bit

2     less than that.  The 23rd is a Monday.  I'm proposing the 27th,

3     which would be Friday.

4          MS. MIRER:  That's fine.

5          THE COURT:  Okay.  Talk to me about discovery.  What

6     discovery does the plaintiff anticipate taking?

7          MS. MIRER:  Your Honor, when things were not stayed I

8     submitted to the defendant requests to admit interrogatories

9     and document requests, and the defendant took the position that

10    given everything being stayed, he didn't have to respond to

11    anything at that point.  So we've already provided them and

12    have filed those discovery requests.  And so --

13         THE COURT:  Okay.  Is that the extent of the discovery

14    you intend to take?

15         MS. MIRER:  No, I mean obviously --

16         THE COURT:  What other discovery?

17         MS. MIRER:  I want to take the depositions of

18    Mr. Liberato, and at this point basically him as the owner.

19         THE COURT:  Okay, all right.  That seems like fairly

20    modest discovery.

21         How about the defendant, Mr. Restituyo, what discovery

22    do you anticipate taking?

23         MR. RESTITUYO:  Your Honor, we would serve

24    interrogatories for sure.  And since we doubt that they have

25    documents, we'll certainly take depositions of the plaintiffs.

F3czramm                         Motion

```
 1            THE COURT:  How many -- do you know, Ms. Mirer, how
 2    many of the plaintiffs have some documents they were keeping
 3    track in some way of their hours, days worked or paid?
 4            MS. MIRER:  I think most have some documents.  We
 5    asked each one of them to, just for our purposes, to develop
 6    what they thought was the proper calendar.  So we, for us to do
 7    a --
 8            THE COURT:  To develop a calendar or was this a
 9    preexisting calendar?
10            MS. MIRER:  We gave them a calendar, and so we could
11    do our own internal calculations.  That they filled out as to
12    how many hours they work and what the shifts were.  That's our
13    work product.
14            THE COURT:  Did any of them have
15    contemporaneously-created documents?
16            MS. MIRER:  I think some of them, did, yeah.  I think
17    some of them had their envelopes.
18            MR. KRASELNIK:  We have pay envelopes that say the
19    amount of hours worked.
20            THE COURT:  They kept.
21            MR. KRASELNIK:  They kept.  You know, the employer
22    wrote it, Simon Grullon, 72 hours, Simon Grullon, 66 hours --
23            THE COURT:  So you're going to get some documents.
24            MR. RESTITUYO:  So then I guess we'll be asking for
25    the documents.
```

F3czramm                        Motion

1          THE COURT:  Okay, but --

2          MR. RESTITUYO:  I'm not --we understand it's modest,

3   your Honor.

4          THE COURT:  And I also assume that the depositions

5   you're talking a couple hours per employee per plaintiff, maybe

6   a little more than that?  I'm just trying to get a sense of --

7          MR. RESTITUYO:  Yeah.

8          THE COURT:  -- when I set a discovery deadline, am I

9   going to be killing you or not.  And it sounded to me like a

10  reasonable discovery -- I mean, none of this is going to take a

11  lot of time.

12         MR. RESTITUYO:  Your Honor, in fairness, none of it

13  individually takes a lot of time, but you have set briefing on

14  a couple of questions that are pending, and they're concurrent

15  with, you know, the notice.  And so --

16         THE COURT:  I know.  I'm bound and determined to get

17  you guys a trial.

18         MR. RESTITUYO:  And we appreciate that, your Honor,

19  but I'm sure Ms. Mirer has other cases and we also have other

20  cases.  And so sadly and unfortunately those can't be placed in

21  abeyance while this gets resolved.

22         THE COURT:  All right.  Do either parties anticipate

23  that you're going to need expert discovery from the plaintiffs'

24  perspective?

25         MS. MIRER:  I don't think --  I mean I think to the

F3czramm                    Motion

1   extent that we may have somebody who does calculations for us,

2   other than what we've done just on the excel sheets, we may

3   have that.  But --

4            THE COURT:  Right, okay.

5            MS. MIRER:  But, your Honor, the main problem that we

6   have is that we think there is a significant amount of evidence

7   that the records that we're going to receive are going to be

8   based on false -- are false, in the sense that people had to

9   sign false documents.  And so there is going to be -- there may

10  be some issues that we have to raise with -- at least maybe

11  take some deposition of some of the other people even though

12  they're not defendants, so, yeah.

13           THE COURT:  I ask you who --

14           MS. MIRER:  Yeah.  So I'm just thinking in terms of

15  all of these things that have come up with respect to doing

16  calculations and potential paucity of documents.

17           THE COURT:  Okay.  That still doesn't generate expert

18  discovery.

19           MS. MIRER:  Yeah, I don't know that we would need it

20  except for maybe some --

21           THE COURT:  Spread sheet person.

22           MS. MIRER:  Spread sheet person, yeah.

23           THE COURT:  How about you?

24           MR. RESTITUYO:  We don't foresee expert discovery,

25  your Honor.

F3czramm                          Motion

1          THE COURT:  Okay.  Does either party anticipate filing

2    a motion for summary judgment?  Ms. Mirer?

3          MS. MIRER:  Depending on what the evidence is, yes.

4          THE COURT:  Well, I assume he's not going to admit

5    that he falsified documents.

6          MS. MIRER:  I think Victor Liberato sort of did

7    already.

8          THE COURT:  Okay.  I will set up a schedule that

9    includes motion for summary judgment.  But I would ask you all

10   to think very hard about whether that is a useful expenditure

11   of time.  And the reason is because I cannot imagine that you

12   are going to dispose of the entire case, and I can't imagine

13   that you're really going to narrow the issues that are going to

14   have to be tried with a motion for summary judgment.  So what

15   that means then is that I'm going to move your what would

16   otherwise had been the discovery deadline back to give me time

17   to figure in a motion for summary judgment.  So your discovery

18   deadline is going to be June 19th.  That is a firm deadline.

19   You will have a status conference on June 19th.  It'll be at

20   11:00 o'clock.  I do my normal calendar at 10:00, so that will

21   essentially put you at the end of the normal calendar.

22         Your summary judgment motion will be due on June 26.

23   This is all going to go into an order, so you don't have to

24   take down these dates, but you'll get a sense of where I'm

25   going.

F3czramm                    Motion

1              So the summary judgment motions will be due June 26,

2      responses will be due July 2nd, replies will be due July 6th.

3      If you any motions in limine for the trial, they will be due

4      July 9.  Responses to the motion in limine will be due

5      July 16th.

6              The joint pretrial order -- look at my individual

7      rules to see what that order is supposed to look like -- are

8      also due July 16th.  And other things that are included in

9      there are requests to charge and proposed voir dire questions.

10             Final pretrial conference will be on July 23rd at 2:00

11     o'clock.  Trial will begin July 27th at 9:30 with jury

12     selection.

13             Let me see.  So just to reiterate.  So the briefing on

14     the motion to dismiss for lack of subject matter jurisdiction

15     is due the 23rd, with a response, if any, due the 27th -- so,

16     Mr. Restituyo, you said you've got a motion to disqualify

17     that's going to be ready on Friday?

18             MR. RESTITUYO:  Monday, your Honor, if we can -- I

19     mean yes.

20             THE COURT:  Today is -- so on the 16th?

21             MR. RESTITUYO:  Today is Thursday.  Yes, your Honor.

22             THE COURT:  Okay.  So your deadline is 3/16 for your

23     motion to disqualify.  Your deadline to respond to the motion

24     to disqualify is 3/27, and reply brief will be due on April 1.

25             All right, is there anything that I had forgotten?

F3czramm                    Motion

1          MS. MIRER:  Only thing I would ask, your Honor, is

2     that because we filed discovery back in October I believe it

3     was, and there were requests to admit that were not even

4     responded to, whether or not those would be deemed admitted or

5     do I have to resubmit those?

6          THE COURT:  I don't see any reason why you should have

7     to resubmit them, but you got to respond to the RFAs.

8          MR. RESTITUYO:  Your Honor, sure.  You just dismissed

9     against, you know, seven or eight defendants.  I mean, it would

10    have been unfair to have --

11         THE COURT:  I'm not deeming them admitted.

12         MR. RESTITUYO:  Okay.

13         THE COURT:  Here's what -- look, there is one thing I

14    despise more than anything else, and that is discovery

15    disputes.  Work together.  You know what each other wants, know

16    what each other needs.  Go through your RFAs.  You know what is

17    out now because those defendants are out.

18         You should think in terms of your sexual harassment

19    and pregnancy claims likely being out.  Stage your discovery in

20    a way that makes sense, recognizing that you've got to work

21    together because June 19th is not that far away, and I'm

22    telling you it's a firm date.  The end of July I can do this

23    trial.  I don't want to push it much beyond that.  This should

24    not be a long trial.  But we all know that with Spanish

25    speaking witnesses everything slows down.  So this is not going

75

F3czramm                        Motion

1   to be a two day FSLA case.  So I want to get this case tried,

2   and my window to do that is the end of July.  So I've worked

3   backwards off that date to set all the balance of these dates,

4   which means your discovery deadline is a firm deadline.  If you

5   run into problems and you're doing the best you can to work

6   collaboratively and cooperatively and can't work it out, don't

7   let it fester.  Bring to it to my attention earlier rather than

8   later so that you're not on June 5th saying, oh, we have this

9   huge problem and we can't possibly get all this done because we

10  have this problem that hasn't been worked out yet.  Okay?

11          MR. RESTITUYO:  Yes, your Honor.

12          THE COURT:  Yes.

13          MS. MIRER:  The only thing I did think of is that

14  there is a strong issue with respect to the tip requirements

15  for tipped workers and that may be a subject of a summary

16  judgment motion with respect to the tip workers.

17          THE COURT:  That is that they don't have the right

18  records --

19          MS. MIRER:  Exactly.

20          THE COURT:  -- showing the tip credit?

21          MS. MIRER:  Exactly.

22          THE COURT:  Do you know, did they keep appropriate

23  records relative to tip credit?

24          MR. RESTITUYO:  Your Honor, we may very well be moving

25  for summary judgment after we provide the records, so --

F3czramm                    Motion

 1              THE COURT:  You may.

 2              MR. RESTITUYO:  I mean, so.

 3              THE COURT:  You may.

 4              MR. RESTITUYO:  There seems to be some presumption

 5      that we wouldn't move, but --

 6              THE COURT:  You can both move.

 7              MR. RESTITUYO:  Right.

 8              THE COURT:  You can cross move.

 9              MR. RESTITUYO:  So we're going to provide discovery as

10      we would and in cooperation and without dispute and --

11              THE COURT:  Great.  Just in terms of staging the

12      discovery, I don't set rules on who goes first and who does

13      that.  Just work it out.  You're going to have to be doing a

14      lot of this in parallel, because otherwise you're never going

15      to make the deadline.

16              MS. MIRER:  Your Honor, we will resubmit by certainly

17      Monday or Tuesday next week our discovery request to them and

18      that should run the 30 days from when we need the information.

19              THE COURT:  Again, that's the sort of thing that I

20      would recommend you and Mr. Restituyo talking to each other, as

21      opposed to you simply serving them when I've just laid out a

22      whole bunch of work for all of you.  So the question is is that

23      the most collaborative way of doing it, or is there a way that

24      you could work together to say, let's talk about what you got,

25      let's talk about what you need, here's -- and work it out

F3czramm                        Motion

1    together.  That's all I'm saying.

2            MS. MIRER:  Your Honor, it would be my hope to be able

3    to talk to Mr. Restituyo.  Unfortunately, there are times when

4    I cannot get a call back, so.

5            THE COURT:  Okay.  Call her back.

6            Just, both of you, this should be like, you know, I

7    need a big reset button.  Reset the relationship.  You are

8    going to have to work together collaboratively or both of your

9    clients are going to suffer.  I mean, I can't say it more

10   clearly than that.

11           I understand your clients' position and I understand

12   her clients' position.  You're the professionals, you're the

13   one who needs to rise above it all.  Work collaboratively and

14   cooperatively in order to get to where we need to go.  Okay?

15           MR. RESTITUYO:  Your Honor --

16           THE COURT:  I'm not -- look, I'm not --

17           MR. RESTITUYO:  No, no.

18           THE COURT:  Understand something.  I do not hold

19   either of you primarily responsible or not primarily

20   responsible.  I don't care.  All I'm saying is work together,

21   or all of your clients are going to suffer, okay.

22           All right, anything further?

23           MR. RESTITUYO:  No, your Honor.

24           THE COURT:  Anything further?

25           MR. RESTITUYO:  Oh, yes, your Honor.  And actually

F3czramm                    Motion

1    this should be addressed by my colleague.

2              MR. RODRIGUEZ:  Your Honor, with respect to -- you

3    ordered that the videos in the RICO action be transcribed.

4              THE COURT:  Yes.

5              MR. RODRIGUEZ:  If it's okay that I address that?  I

6    wanted to ask for an extra day or two.  We have an SDNY

7    interpreter doing the transcription, but I haven't received an

8    update from her.

9              THE COURT:  Okay.

10             MR. RODRIGUEZ:  But I expect that in the next day or

11   two.

12             THE COURT:  Okay.

13             MR. RESTITUYO:  To be clear, your Honor, she told us

14   she would have it last night.  And so as of the time that we

15   came into court and gave up our cell phones, we hadn't received

16   the update.

17             THE COURT:  All right.  That's fine.  So if you report

18   back to the Court when you think we're going to get it.

19             MS. MIRER:  We provided them last night our

20   transcriptions, so we'll -- hopefully we'll hear from them if

21   they accept them.

22             THE COURT:  Okay.  Essentially you've got two people

23   translating the same videotape.

24             MS. MIRER:  No, no.  No, no.  We had --

25             THE COURT:  Divided up?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F3czramm                    Motion

1          MS. MIRER:  No.  We transcribe the ones that we

2     submitted.

3          THE COURT:  Okay.

4          MS. MIRER:  The videos we submitted and we had an

5     outside person do it.

6          THE COURT:  Okay.

7          MS. MIRER:  So, and we've provided them the

8     transcripts for them to determine whether they agreed.

9          THE COURT:  Okay.  And you transcribed -- you've got

10    the SDNY interpreter working on the tapes that you submitted;

11    is that right?

12         MR. RODRIGUEZ:  Yes.

13         THE COURT:  Okay.

14         Okay.  So when did i originally say they were due?

15         MS. MIRER:  Friday.

16         THE COURT:  Friday?  So you're asking -- okay, so I'll

17    adjourn that till the 18th.  Okay.

18         MS. MIRER:  Does that include us as well?

19         THE COURT:  Yes.

20         MS. MIRER:  Okay.

21         THE COURT:  Everybody.  All right, thank you.  Okay,

22    thank you.

23         MR. RESTITUYO:  Thank you.

24         MR. RODRIGUEZ:  Thank you.

25         (Adjourned)