UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSCAR RAMIREZ, JAVIER GUERRERO, GERONIMO HERCULANO, PABLO RUTILIO, MAGGIE ANDRES CRECENCIO, GUILLERMO ALVAREZ, JUANA CRUZ HERNANDEZ, LEONIDAS MATEO, ANYELI OVALLES HERNANDEZ, MIRNA REYES MARTINEZ, RAMON ROSARIO, OMAR TAVERAS, LUIS ESPINAL, JUAN SALMERON, ERASMO DIAZ, JULIO RODRIGUEZ JACINTO POLANCO, RAUL GUILLEN ROSA, JOSE DANIEL RAMOS, VICTORIANO DE OLEO, FRANCISCA PENA, FELIX MANUEL BAUTISTA and SIMON GRULLON,

Civil Action No. 14-cv-4030

Civil Action No. 13-cv-7249

Plaintiffs,

-against-

M L RESTAURANT CORP., M.L. SAN JOSE ENTERPRISES, CORP., d/b/a LIBERATO RESTAURANT, MANUEL ANTONIO LIBERATO jointly and severally,

Defendants.

## AFFIRMATION OF MARTIN E. RESTITUYO IN SUPPORT OF DEFENDANTS' MOTION TO STAY THE DEFAULT PROVISIONS OF THE SETTLEMENT AGREEMENT

MARTIN E. RESTITUYO, an attorney duly admitted to practice before the Courts of the State of New York, hereby affirms the following under penalty of perjury:

1. I am the founder of the Law Offices of Martin E. Restituyo, P.C., counsel for Defendants Manuel Antonio Liberato, M L Restaurant Corp., and M.L. San Jose Enterprises Corp., d/b/a Liberato Restaurant (collectively the "Defendants"), and as such am fully familiar with the facts herein.

2. I submit this Affirmation, along with the Exhibits attached hereto in support of Defendants' motion to stay the default provisions of the Settlement Agreement. *See* Exhibit "A".

3. As the Court is aware, settlement in this action was reached only after extensive litigation in Federal and State Court where both sides sued each other alleging multiple violations of law.

4. Among the many concerns involved during settlement conversations was Defendants' ability to pay.

5. Specifically, during the litigation Defendants indicated their willingness to settle but noted that settlement at the amounts desired by the Plaintiffs would force them into bankruptcy.

6. Taking into account Defendants' concerns and to get a fuller understanding of Defendants' ability to pay, on July 10, 2015, parties agreed to have a court appointed accountant review Liberato Restaurants' finances. *See* Exhibit "B".

7. On July 14, 2015, Mr. Randall M. Paulikens of WithumSmith+Brown, P.C., acting as Court Appointed Special Master, presented the findings of the audit he conducted on Liberato Restaurants. *See* Exhibit "C".

8. And so it was that after months of extensive litigation and with the understanding that a sustainable payment plan could be achieved, the parties entered into the Settlement Agreement whereby, among other things, the Defendants committed to paying the Plaintiffs $1,000,000 in damages.

9. As part of the Settlement Agreement, Mr. Liberato had to make a series of initial payments totaling $200,000.00, and commencing on May 1, 2016, 64 monthly instalments of $12,500.00 totaling $800,000.00.

10. On October 7, 2015, this Court entered an order stating that it will retain jurisdiction over this action to enforce the terms of this settlement agreement. *See* Exhibit "D".

11. On October 27, 2015, this Court entered an order approving the settlement. *See* Exhibit "E". In its order, the Court highlighted that the primary obstacle of this settlement was Defendants' ability to pay. Exhibit E at 4. As a result, the Settlement Agreement was structured so that Defendants could make substantial payments in the first few months followed by "monthly payments that are within Defendants' financial ability to pay." *Id.*

12. Mr. Liberato timely paid the initial $200,000.00, and timely made 47 consecutive instalments of $12,500.00 totaling $787,500.00.

13. Unfortunately, through no fault of his own, the Covid-19 pandemic and Governor Cuomo's executive orders, forced Mr. Liberato to shut down his restaurants in March 2020. *See* Exhibit "F".

14. This shut down cut off Mr. Liberato's ability to make an income, and Mr. Liberato was unable make his monthly instalments to the Plaintiffs.

15. After the March 2020 payment, I contacted Ms. Mirer, Plaintiffs counsel, to advise her that Mr. Liberato would not be able to make April's payment or any future payments as long as the restaurants were closed.

16. To that date no payment had ever been missed or even submitted late.

17. As a result of Covid-19 Mr. Liberato's restaurants were shut down from March 2020 through June 2020. Therefore, Mr. Liberato was unable to make payments throughout this time.

18. Additionally, to make matters worse, around the first week of June 2020, rioters protesting the death of George Floyd broke into and destroyed the Liberato Restaurant located at 10 Burnside Avenue, Bronx New York. Mr.

19. Given the extensive damage this restaurant remains closed.

20. We alerted counsel for Plaintiffs' of Mr. Liberato's unforeseen hardship in a letter dated June 6, 2020. *See* Exhibit "G".

21. As the Court may recall, at the time that the Settlement Agreement was entered into Mr. Liberato operated two full-service restaurants in the Bronx. The restaurants had approximately 80 employees and offered its customers a full dining experience as well as takeout.

22. Today, the only Liberato Restaurant open is the location at 1 West 183rd Street, Bronx, New York, and it is only open for takeout.

23. Moreover, notwithstanding the New York State mandate that permits restaurants to use the sidewalk and streets in front of their premises for outside dining, this option is not available to this restaurant. The Liberato Restaurant located at 1 West 183rd Street is located next to a Fire Department Station of the City of New York, and as such this arrangement is prohibited.

24. Mr. Liberato has not made any monthly instalments from April 2020 through August 2020. Although this constitutes a default under paragraph 3 of the Settlement Agreement, we believe this default should be excused because it directly resulted from Covid-19—a factor completely outside of Mr. Liberato's control—and the lack of a force majeure clause in the Settlement Agreement. *See* Exhibit "A" ¶ 3.

25. Additionally, Mr. Liberato believes this Court should revise the terms of the Settlement Agreement because his financial standing has substantially decreased since it was last assessed in 2015. As a result, Mr. Liberato no longer has the ability to pay the remaining monthly instalments.

26. If Mr. Liberato is forced to pay the remaining instalments, he will suffer undue hardship and potentially go bankrupt. *See* Liberato Affidavit.

27. Though the parties have been in communication and are trying to come to an agreement in good faith. We yet again find ourselves in a similar impasse to 2015. But for the Court's intervention and the revision of Mr. Liberato's assets, the parties would not have settled the matter when they did.

28. We believe that similar intervention by the Court here will assist the parties in reaching an amicable resolution.

29. For the aforementioned reasons, and in order to avoid an unnecessarily punitive outcome, we ask this Court to stay the default provisions under this Settlement Agreement, consider the $787,500.00 as satisfying the settlement sum, and any other relief this Court deems just and proper.

Dated: New York, New York
August 21, 2020

_____
Martin E. Restituyo, Esq.